**TURMAN et al. v. DUCKWORTH et al.**
**Civil Action No. 3013.**

District Court, N. D. Georgia,
Atlanta Division.

Aug. 26, 1946.

Before SIBLEY, Circuit Judge, and STRUM and SCARLETT, District Judges.

PER CURIAM.

The petition, brought in behalf of plaintiffs and others similarly situated, alleges that they are respectively citizens and registered qualified voters of Fulton and De-Kalb Counties, Georgia, and voted in the Democratic primary held July 17, 1946, casting their votes for a candidate for nomination for Governor of Georgia who obtained the plurality of votes cast in the primary, but did not obtain the majority of county unit votes required by the Georgia statutes relating to statewide primaries, Georgia Code of 1933, Sect. 34-3212, and Georgia Laws of 1943, p. 347; that the Chairman and Secretary of the State Democratic Committee intended to certify to the Secretary of State as the nominee, pursuant to the last cited statute, the candidate having the majority of county unit votes, and the Secretary of State would place such nominee on the official ballots furnished by the State for use in the general election in November, 1946, unless enjoined by the court, to the irreparable damage of petitioners, they having no remedy unless in equity. The contention set up is that the portions of the Statute which make the majority of the county units to control the result rather than the plurality or majority of all ballots cast in the election discriminate, contrary to the equal protection clause of the Fourteenth Amendment of the Constitution of the United States, against the voters in such counties as Fulton and De-Kalb, which have a voting strength far in excess of the county unit votes allowed them, as compared with smaller counties; and that the nomination of a candidate for Governor ought to follow the rule of the final election, by which, as provided in the State Constitution, Article 5, § 1, Par. 4, the number of votes cast throughout the State controls. The relief originally prayed was that the county unit rule provided by the statute be declared null and void, and that the Democratic Executive Committee and its Chairman and Secretary and the Secretary of State be enjoined from complying with such statute.

Charles S. Reid, Harold T. Patterson, Marshall L. Allison, W. D. Thomson, John L. Tye, Jr., and William F. Lozier, all of Atlanta, Ga., for plaintiffs.

Eugene Cook, Atty. Gen., of Ga., Victor Davidson, William S. Mann, and Cleburne E. Gregory, Jr., Asst. Attys. Gen. of Ga., Samuel D. Hewlett, E. L. Forrester, and B. D. Murphy, all of Atlanta, Ga., and C. Baxter Jones, and E. W. Maynard, both of Macon, Ga., for defendants.

The District Judge ordered the petition filed but refused a restraining order, and summoned a court of three judges to consider the grant of an interlocutory injunction. Before that court an amendment of the petition was made to allege that since the filing of the petition the time had expired within which candidates could under the State laws qualify as such and have their names entered on the official ballots, so that if the candidate having the majority of the county unit votes has been certified to the Secretary of State his name alone would appear on the official ballot as a Democratic candidate, and in that event it was prayed that the Secretary of State be enjoined from causing the returns from the general election to be laid before the General Assembly for a declaration of the result of the gubernatorial election.

The Secretary of State moved that he be dismissed as a defendant because the suit against him as a State official was in effect against the State itself, and the State has not consented to be sued, and because no claim was stated against him on which relief can be granted.

The other defendants also moved a dismissal as to themselves.

The answer for all defendants, filed subject to the motions to dismiss, asserted that if the things complained of are wrong, the remedy is not in a court of equity, but in the legislative and political department of the State government; that plaintiffs voted in the primary, in which the county unit rule for declaring the result was not only fixed by law, but also by the rules of the State Democratic Executive Committee promulgated for this primary, and thereby plaintiffs agreed to such rule, and became estopped to question its application after their candidate failed to win under it; that plaintiffs delayed to object till four days before the time limit for candidates to qualify, and that such delay constitutes laches, which bars equitable relief; that one day before the final date for qualifying candidates, August 6, 1946, the Chairman and Secretary of the Executive Committee did certify to the Secretary of State as the Democratic nominee the candidate having the majority of the county unit votes, and the Secretary of State did (on August 12 as was testified) make up the forms for the official election ballot and did send them out to the Ordinary of each County to be printed as required by law, so that the matter has become moot. The answer substantially admitted the facts alleged in the petition, denying the legal conclusions.

### Findings of Fact.

The facts are as above set out. In addition the printed rules of the Democratic Executive Committee governing the Democratic primary called for July 17, 1946, were introduced; Rule VI, providing: "Candidates for Governor, State House Officers, including Justices of the Supreme Court and Judges of the Court of Appeals, who receive respectively the highest number of votes in each County shall be considered to have carried that County and entitled to the full vote of such County on the County unit basis, as provided by law. * * *" An exhibit to the petition showing the tabulated vote by Counties was neither admitted nor denied by the answer, but was treated as correct in the hearing and we find it to be substantially correct. It shows a total Democratic vote in DeKalb County of 26,770, and in Fulton County of 84,550, each County having six unit votes. Other 6–unit counties cast a vote ranging from Chatham, 39,595, down to Floyd, 11,167. The four–unit counties cast a vote between 10,000 and 5,000. The two–unit counties in general voted less than 5,000; Chattahoochee County only 265, and several others 500 to 600 votes. As facts of common knowledge of which it was conceded the court can take judicial notice, it is further stated that the population of Fulton and DeKalb Counties, which are contiguous, is rapidly increasing; that Fulton has in recent years absorbed two contiguous counties, Milton and Campbell, by a popular vote as provided in the then Constitution, though not gaining thereby additional representatives in · the Legislature, or county unit votes in statewide primaries. Chattahoochee County has had about half its territory taken by the United States and incorporated in Fort Benning.

As background for county units in State political organization, these general facts are true: The early Constitutions of Geor-

gia not only recognized them in choosing legislators, but also in choosing the Governor. Since 1823, however, the Governor has been chosen by statewide vote. The legislators are still chosen by Counties and a few of the larger Counties have continuously been given additional members in the House of Representatives. Since 1868 the Counties have been by the Constitutions put into three classes, to be reascertained after each decennial census, a fixed number of the most populous being entitled each to three representatives, a fixed number of the next most populous having each two representatives, and the remaining counties having one each. Not only in Georgia, but throughout the United States, the great political parties have regarded county representation in nominating their candidates. Originally, when travel was difficult, the members of the Legislature themselves assembled in a party caucus and recommended candidates. After 1830 the convention system became prevalent, each County sending delegates generally equal to twice the number of their Representatives. About 1903, the system of party primaries became prevalent, and they were in most States regulated by law. See Introduction to American Government, by Ogg & Ray, pp. 848 to 850. In Georgia primaries were regulated by law to some extent in 1890, but the regulation now in controversy was not made till 1917. But the county unit rule was steadily observed, both in party conventions and primaries, except that in 1906, when Governor Hoke Smith, of Fulton County, was in party leadership that rule was abolished. The abolition was made an issue in the next primary nomination for governor, and Governor Smith was defeated on a popular vote basis, and the county unit rule reinstated, and has so remained. See statement of C. E. Gregory, exhibited in Cook v. Fortson, D.C., 68 F.Supp. 624, decided this day. When in 1917 the Legislature came to regulate primaries more fully, in adopting the county unit rule it continued what was already in existence by the will of the political parties.

### Conclusions of Law.

On this hearing for interlocutory injunction we will not pass finally on the motions to dismiss. We consider them, however, on the general question of the grant of interlocutory relief. And we consider that this case is in its general aspects one of party politics, in which courts should not meddle unless the duty to do so is plain. We are of opinion that it would be going too far for a court of equity to undertake to prevent the Secretary of State from performing his functions under laws confessedly valid, or to interfere with his transmitting the returns of the general election to the Legislature. A better case for interfering with the application of the county unit rule by the Democratic Executive Committee would have been presented if the plaintiffs had promptly moved to assert its constitutional invalidity and to stop its application when the Executive Committee, which had the right to determine whether a primary or a convention should be held for nominations, did call the primary of July 17, and published the rules under which it would be conducted, including expressly the county unit rule. The candidates accepted that rule, and none of them is complaining of its application. These voters, voting without protest under it, do not stand well in a belated complaint made after it was too late to have another primary or even a convention nomination, the time for candidates in the general election to qualify being too close at hand.

[1] We have not here a criminal statute about a political matter, as In re Yarbrough, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274, and United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, nor a statutory right of action for damages, as in Nixon v. Herndon, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759; Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987, 151 A.L.R. 1110 and King v. Chapman, 7 Cir., 154 F.2d 460. In such cases the power and duty of Courts to act is plain. Here equity is asked to interfere to achieve or frustrate a political result, and that through the discretionary remedy of injunction. Whether it be that the subject matter is not of equitable cognizance, or merely that equity should withhold its hand, we think the decision in Colgrove v. Green,

66 S.Ct. 1198, requires us to deny equitable relief.

So concluding we might well stop. But as an appeal lies of right, in order that all questions may be ripe for consideration in the Appellate Court if necessary, we will briefly say that on the ultimate merits we do not think the State of Georgia has been shown to have deprived the plaintiffs of the equal protection of the laws. It was held in King v. Chapman, supra, that the State of Georgia has made party primaries, when called by any political party, a part of the election machinery of the State, and that deprivations of voting rights by virtue of the primary statutes are deprivations by the State. And it is true that under the State Constitution the general election of a governor is not by County units, but by the consolidated popular vote. But there is nothing in the State Constitution in force in 1917 or now, that would prevent the legislature from prohibiting primary elections altogether, or if they are permitted, from stating the conditions on which they may be held, if the parties elect to have them. The Constitution of the United States has nothing to do with State elections, save as specially provided in certain of the amendments, Minor v. Happersett, 21 Wall. 162, 22 L.Ed. 627; Breedlove v. Suttles, 302 U.S. 277, 58 S.Ct. 205, 82 L.Ed. 252. The amendments relating to abridging the right to vote on account of race, color, or sex, are not involved here. The equal protection clause of the Fourteenth Amendment is alone relied on. Nothing is better settled than that legislative classifications are not by it prohibited if there is a rational basis for them. The three most recent Georgia Constitutions have classified the counties into three classes, based on population and to be readjusted after each census. A federal court can hardly say that Fulton and De-Kalb Counties ought by virtue of the Fourteenth Amendment to have a fourth class created to give their voters proportional power and influence in the Legislature, or that the smaller counties should be put into another class having no representative. Our system of government, State and federal, has never sought or demanded that each voter should have equal voting influence, though that might seem an ideal of democracy. In our federal government under its Constitution each State has in the Senate two "unit votes," wholly regardless of population, in the making of all laws, and in confirming treaties and appointments to federal offices. These unit votes also appear in the electoral college in choosing a president, so that there have been presidents who did not receive a majority of the popular votes. The people of the District of Columbia have no vote in their government but are ruled by a Congress elected wholly by others. Touching nominations, all the great political parties in their State and national organizations have followed in their nominating conventions the legislative strength of the States or counties represented, thinking that not to be irrational. Why should it be considered not rational for the Georgia Legislature, in authorizing the substitution of a primary for a convention, to say the same rule should govern in either? Moreover there is a practical convenience in the County Unit System in primaries in this: The primary is an additional election, taking much time of voters from their work. In particular counties the contests may be not at all close, so that the result in that county is foreknown to its voters. Very many voters can abstain from voting, knowing their candidates will not suffer thereby. In the returns from the primary now in question it appears that in many of the smaller counties the vote was overwhelming for one candidate. Many voters may not have voted at all for that reason. It is argued too in behalf of the convention and county unit systems that it is for the general good that the great centers of population should not be allowed to control the policies and candidates of a political party.

It is undeniably true that there is a glaring inequality between Chattahoochee County and Fulton County in representation in the Legislature, and by consequence in applying the county unit rule to a primary. Perhaps the remnant of Chattahoochee County ought to be merged into an adjoining county. Perhaps Fulton County, which has absorbed Milton and Campbell Counties, ought to have the rep-

resentation of these counties added to its own. But the remedy for these exceptional situations is to be sought through changes in the law, rather than by appeal to courts of equity to upset the law as unconstitutional because of a hardship that has arisen.

We conclude on all grounds that an interlocutory injunction should be denied.

### Judgment Order Denying Interlocutory Injunction.

On August 16, 1946, the above stated case came on for a hearing for an interlocutory injunction before a court of three judges as by statute provided, 28 U.S.C.A. § 380, Hon. FRANK M. SCARLETT, District Judge, presiding by designation in the Northern District of Georgia, having called to his assistance Hon. SAMUEL H. SIBLEY, Circuit Judge, and Hon. LOUIE W. STRUM, District Judge of the Southern District of Florida. After hearing evidence and argument and taken time to consider, it is ordered and adjudged that because of the findings of fact and conclusions of law filed herewith, an interlocutory injunction be and the same is hereby denied.