John F. DYER, Plaintiff,

v.

KAZUHISA ABE, Toshio Ansai, Benjamin F. Dillingham II, Nelson K. Doi, John G. Duarte, Dee Duponte, John Braga Fernandes, William H. Heen, William Hardy Hill, Joe Itagaki, Herbert K. H. Lee, Noboru Miyake, William J. Nobriga, Sakae Takahashi, Wilfred C. Tsukiyama, Peter A. Aduja, George R. Ariyoshi, Elmer F. Cravalho, Masato Doi, O. Vincent Esposito, William E. Fernandes, Yasutaka Fukushima, Joseph R. Garcia, Jr., Stanley I. Hara, Manuel S. Henriques, Robert Leighton Hind, Jr., Daniel K. Inouye, Anna F. Kahanamoku, Charles E. Kauhane, Robert N. Kimura, Raymond M. Kobayashi, Russell K. Kono, Elwell Percy Lydgate, Spark M. Matsunaga, Philip P. Minn, Sumio Nakashima, Steere G. Noda, Manuel G. Paschoal, Hebden Porteus, Akoni Pule, Esther K. Richardson, Toshio Serizawa, David K. Trask, Jr., Toshiharu Yama, Nadao Yoshinaga, Samuel Wilder King, Farrant L. Turner, Demetria T. Heyfron, Defendants.

Civ. No. 1435.

United States District Court
D. Hawaii.
Feb. 10, 1956.

Hogan, Jamieson, Dyer & Rothwell, John F. Dyer, Honolulu, Hawaii, for plaintiff.

Edward N. Sylva, Atty. Gen., of Hawaii, Richard K. Sharpless, Asst. Atty. Gen., of Hawaii, Percy K. Mirikitani, Morio Omori, Deputy Attys. Gen., of Hawaii, Richard K. Sharpless, Asst. Atty. Gen., for certain defendants.

Fong, Miho, Choy & Chuck, Honolulu, Hawaii, Katsugo Miho, Honolulu, Hawaii, for certain defendants.

### McLAUGHLIN, Chief Judge.

This case presents anew an age old problem of democracy, the "rotten borough." The republican principles of our government call for the equal value of each citizen's vote. An exception exists if a political solution as to geographic location has been written into fundamental law. Unfortunately, in an era where the concept of law over man is heralded as an achievement of our civilization, we find many legislators placing themselves above their fellow citizens in their duty to obey constitutional law. The courts have almost uniformly refused effective redress to voters, mainly relying upon theories of separation of powers and the inability or reluctance of the judiciary to interfere with the legislature. But this is merely an easy way out of a difficult problem. To say something is delicate does not make it immune from the principles of justice. Any court action is important and delicate to the parties involved, as well as to the public, which has a civic interest in the effective functioning of justice. To allow "rotten boroughs" to continue in open contravention of constitutional law, is a direct contradiction of the principles of justice. We are not asked to open the floodgates of the courts to the political problems of the legislature. We are requested to enforce the clear command of the fundamental law which the legislators have sworn to obey.[1]

The plaintiff is a voter on the Island of Oahu in the Territory of Hawaii. He alleges that, contrary to the Organic Act of Hawaii, 48 U.S.C.A. § 491 et seq., the territorial legislature has not reapportioned itself to adjust to population shifts occurring in Hawaii these past fifty-five years. As a result, plaintiff claims he has been deprived of the equal protection of the laws in his rights of suffrage, of due process of law, and of a right secured him by a law of the United States.

■ The defendants are the members of the territorial legislature, the Governor of Hawaii, the Secretary of Hawaii, and the United States Treasury Department's disbursing agent. They move to dismiss the action upon the grounds that this Court lacks jurisdiction over the subject matter, and that the complaint fails to state a claim upon which relief can be granted.[2] We disagree, as revealed by our oral ruling of December 12, 1955.

■■ The Fifth Amendment of the United States Constitution[3] applies to the government of the Territory of Hawaii.[4] Implicit within its provisions as

---

[1]. For a general review of the problem of judicial reapportionment of legislative bodies, see Law and Contemporary Problems, Legislative Reapportionment, Vol. 17, No. 2, Spring 1952, School of Law, Duke University; Jones v. Freeman, 1943, 193 Okl. 554, 146 P.2d 564, appeal dismissed, 1944, 322 U.S. 717, 64 S.Ct. 1288, 88 L.Ed. 1558; Walter, Reapportionment of State Legislative Districts, 37 Ill.L.Rev. 20 (1942–1943); Durfee, Apportionment of Representation, 43 Mich.L.Rev. 1091 (1944–1945); Dauer and Kelsay, Unrepresentative States, National Municipal Review, Vol. XLIV, No. 11, Dec. 1955, p. 571; Minnesota Legislative Research Committee, Legislative Reapportionment, Publication No. 63, Oct. 1954; Note, (1919) 2 A.L.R. 1337; Note, (1927), 46 A.L.R. 964; Notes, 56 Yale L.J. 127 (1946–1947), 30 Minn.L. Rev. 37 (1945–1946); 18 Am.Jur., Elections, § 29, p. 200; 16 C.J.S., Constitutional Law, § 147, p. 438.

[2]. Defendant Hefron is not involved in this motion.

[3]. "No person shall * * * be deprived of life, liberty, or property, without due process of law; * * *."

[4]. Farrington v. T. Tokushige, 1927, 273 U.S. 284, 299, 47 S.Ct. 406, 71 L.Ed. 646; accord Duncan v. Kahanamoku, 1946, 327 U.S. 304, 317–319, 66 S.Ct. 606, 90 L.Ed. 688.

applied to a territory is the equal protection of the laws of the Territory.[5] Class discrimination in the electoral process would be a denial of due process itself.[6]

The equal protection of the law is also guaranteed by the Organic Act of Hawaii.[7] It is thus unnecessary to decide whether the Fourteenth Amendment [8] applies directly to a territory. Its protection to individual citizens does apply.[9]

Section 55 of the Organic Act provides for periodic reapportionment of the territorial legislature on the basis of the population in each district.[10] The purpose of this provision was to insure equality of representation in the legislature. Under the Organic Act multi-member senatorial and representative districts are provided.[11] Congress made the first apportionment within these areas.[12]

Originally geographic representation was roughly fair.[13] However, as alleged by the plaintiff, the population has shifted these past years, mainly to Oahu. Without belaboring the obvious, judicial notice can be taken that both branches of the legislature are not

---

5. United States ex rel. Leguillou v. Davis, D.C.D.Virgin Islands 1953, 115 F.Supp. 392, 396, reversed on other grounds, 3 Cir., 1954, 212 F.2d 681.

6. See footnotes 22, 23, and 24.

7. Section 5, 31 Stat. 141, as amended, 48 U.S.C.A. § 495, provides:
"The Constitution, and, except as otherwise provided, all the laws of the United States, * * * shall have the same force and effect within the said Territory as elsewhere in the United States."

8. "Section 1. * * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

9. Alaska Steamship Co. v. Mullaney, 9 Cir., 1950, 180 F.2d 805, 817.

10. Title 48 U.S.C.A. § 562 presently states:
"The legislature, from time to time, shall reapportion the membership in the senate and house of representatives among the senatorial and representative districts on the basis of the population in each of said districts who are citizens of the Territory; * * *."
As originally written § 55, 31 Stat. 141, 150, read:
"The legislature, at its first regular session after the census enumeration shall be ascertained, and from time to time thereafter, * * *."
The codifiers of the 1925 United States Code deleted "at its first regular session after the census enumeration shall be ascertained, and" as executed and obsolete. Actually, there appears to have

been no such execution, the territorial legislature accepting the Organic Act's apportionment. See footnotes 11 and 12. Although Title 48 of the United States Code has not been enacted into positive law, the use of the word "obsolete" is a fair interpretation of the omitted material. As Congress seems to have accepted the changed text in subsequent codes, we will adopt the explanation as valid that the omitted material referred to the first census after annexation rather than each census. However, under any version of § 55 the territorial legislature is still under a recurring duty to reapportion itself either from "time to time" or after each decennial census.

11. Section 32, 31 Stat. 141, 147, 48 U.S.C.A. § 568, divides the Territory into four senatorial districts.
Section 38, 31 Stat. 141, 147, 48 U.S.C.A. § 574, does the same for the house of representatives, creating six districts.

12. Section 33, 31 Stat. 141, 147, 48 U.S.C.A. § 569, apportions the senators from each of these districts.
Section 39, 31 Stat. 141, 148, 48 U.S.C.A. § 575, does the same for the house of representatives.
Subsequently, Congress passed a bill, 32 Stat. 200, deciding which senators shall initially hold office for only two years, instead of a regular four-year term. A turnover of one-half the senators at each territorial election was thus insured.

13. See U. S. Department of Commerce, Bureau of the Census, Fifteenth Census of the United States: 1930, Population, Second Series, Hawaii, U. S. Government Printing Office, Washington: 1931, Table 1, p. 3.

**226**

evenly apportioned.[14] This is in direct violation of the Organic Act which provides for reapportionment "from time to time"[15] to cure such a defect. There is no provision for unequal geographic representation in this Act. The lack of a specific date to rearrange the legislative delegation does not cure this violation. There has never been any effective action taken in the history of the Territory. Sufficient time has elapsed to make the original apportionment contrary in law and fact to the Organic Act.[16] "Time to time" indisputably requires affirmative action within a span of fifty-five years.

██ The failure of the legislature to obey the fundamental law of Hawaii has resulted in plaintiff's being deprived of the equal protection of the laws of the Territory. Electoral legislation can violate this protective device against territorial action, or inaction, in different ways. It can inherently operate in a discriminatory manner.[17] Although fair on its face, it can be used to intentionally discriminate against a class.[18]

The present apportionment act is no longer fair on its face. Taken in conjunction with today's census figures, it inherently operates to discriminate against a whole class of citizens, the voters of Oahu.[19] It is similar in effect to the electoral clause struck down in Lane v. Wilson.[20]

The deliberate inaction of the legislature has caused one law to have unequal and arbitrary effects throughout Hawaii. Under the same act, a voter in one area has a decided electoral preference over a voter in another region, although all are entitled to equal treatment under the Organic Act.[21] This result by non-action has been a purposeful and systematic plan to discriminate against a geographic class of persons. It has been achieved as though a positive statute had been passed to accomplish the same purpose. Biased inaction has had the same result as biased action. It is a denial of the equal protection of the law.

██ The law in question before us also denies due process of law to the plaintiff. Although equal protection of

14. Similar judicial notice was taken in Remmey v. Smith, D.C.E.D.Pa.1951, 102 F.Supp. 708, appeal dismissed, 1952, 342 U.S. 916, 72 S.Ct. 368, 96 L.Ed. 685. An an indication, using the numbers of registered voters in the various districts, a vote in one area is 6.84 times as effective as a vote in another region.

See U. S. Bureau of the Census, Census of Population: 1950, Vol. II, Characteristics of the Population, Parts 51–54, Territories and Possessions, U. S. Government Printing Office, Washington, D.C., 1953, Table 7, p. 52–8.

15. See footnote 10.

16. State courts refusing to interfere with similar statutes have based their decisions on their lack of power to cure the defect, not that the acts in question were legal per se. As a corollary, they held an apportionment statute, valid when enacted, remains in force until superseded by a subsequent valid act. Smith v. Holm, 1945, 220 Minn. 486, 19 N.W.2d 914; State ex rel. Warson v. Howell, 1916, 92 Wash. 540, 159 P. 777; Note, 30 Minn.L.Rev. 37 (1945–1946). As will be hereafter discussed, this Court is not faced with a similar lack of power. Therefore, the corollary of continuing legality disappears.

17. Lane v. Wilson, 1939, 307 U.S. 268, 274, 59 S.Ct. 872, 83 L.Ed. 1281.

18. Snowden v. Hughes, 1944, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497; Rice v. Elmore, 4 Cir., 1947, 165 F.2d 387, certiorari denied, 1948, 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151.

19. See Census of Population: 1950, supra, footnote 14, Table 7, pp. 52–58.

The voters in the first district on the Island of Hawaii also receive similar treatment compared to the voters of the second district thereof.

20. See footnote 17.

21. Compare with Turman v. Duckworth, D.C.N.D.Ga.1946, 68 F.Supp. 744, appeal dismissed Cook v. Fortson, 1946, 329 U.S. 675, 67 S.Ct. 21, 91 L.Ed. 596, rehearing denied, 1946, 329 U.S. 829, 67 S.Ct. 296, 91 L.Ed. 704. In that case no state law forbade the county unit system. Here territorial law does forbid "rotten boroughs."

the law and due process are not always interchangeable, they can overlap.[22] Discriminatory legislation may amount to a deprivation of due process.[23] As stated before, the failure of the legislature to reapportion itself has had the same effect as if it had pointedly favored one regional class of persons over another regional group, in violation of the Organic Act. The result has been arbitrary discrimination affecting persons entitled to similar treatment. It is a denial of due process.[24]

Plaintiff's right of action for the deprivation of these fundamental rights is conferred by 17 Stat. 13, as amended, 42 U.S.C.A. § 1983,[25] formerly 8 U.S.C. § 43, R.S. § 1979. The jurisdiction of this Court is based upon 68 Stat. 1241, as amended 28 U.S.C. § 1343 (3),[26] formerly 28 U.S.C. § 41(14), R.S. § 563(12) and R.S. § 629(16). These statutes should be considered as parallel provisions. They permit the plaintiff to bring a suit for the deprivation of his civil rights.[27]

Plaintiff also alleges this tribunal has jurisdiction under § 1983 itself. The question presented seems never to have been squarely decided by any court. Some cases have spoken of jurisdiction being conferred by both § 1983 and § 1343(3).[28] This appears to be the result of language describing both the right of action and jurisdiction in one sentence. Other decisions mention only § 1983.[29] However, they are mainly concerned with the question of whether a

22. Bolling v. Sharpe, 1954, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884.

23. Bolling v. Sharpe, supra, footnote 22; Kiyoshi Hirabayashi v. United States, 1943, 320 U.S. 81, 100, 63 S.Ct. 1375, 87 L.Ed. 1774.

24. Accord Bolling v. Sharpe, supra, footnote 22; Wallace v. Currin, 4 Cir., 1938, 95 F.2d 856, 867, affirmed, 1939, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441; Southern Bell Tel. & Tel. Co. v. Town of Calhoun, D.C.W.D.S.C.1923, 287 F. 381; United States v. Yount, D.C.W.D.Pa. 1920, 267 F. 861, 863; 16 C.J.S., Constitutional Law, § 569(a), pp. 1150–1151; 12 Am.Jur. Constitutional Law, § 574, p. 270.

25. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

This statute is often called the Civil Rights Act.

26. "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
\* \* \* \* \* \* \* \*

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

27. Hague v. C. I. O., 1939, 307 U.S. 496, 525–532, 59 S.Ct. 954, 83 L.Ed. 1423 (concurring opinion), followed in Douglas v. City of Jeannette, 1943, 319 U.S. 157, 161, 63 S.Ct. 877, 87 L.Ed. 1324.

28. E. g., Valle v. Stengel, 3 Cir., 1949, 176 F.2d 697; Johnson v. Stevenson, 5 Cir., 1948, 170 F.2d 108, certiorari denied, 1949, 336 U.S. 904, 69 S.Ct. 491, 93 L.Ed. 1069; Kenney v. Hatfield, D.C.W.D. Mich.1955, 132 F.Supp. 814; Holmes v. City of Atlanta, D.C.N.D.Ga.1954, 124 F.Supp. 290, affirmed, 5 Cir., 1955, 223 F.2d 93; Terry v. Adams, D.C.S.D.Tex. 1950, 90 F.Supp. 595, reversed, 5 Cir., 1952, 193 F.2d 600, affirmed, 1953, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152; Schatte v. International Alliance, etc., D. C.S.D.Cal.1947, 70 F.Supp. 1008, affirmed per curiam, 9 Cir., 1948, 165 F.2d 216.

29. E. g., Jennings v. Nester, 7 Cir., 1954, 217 F.2d 153, certiorari denied, 1955, 349 U.S. 958, 75 S.Ct. 888, 99 L.Ed. 1281; Geach v. Moynahan, 7 Cir., 1953, 207 F.2d 714; Bomar v. Keyes, 2 Cir., 1947, 162 F.2d 136, certiorari denied, 1947, 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400, rehearing denied, 1947, 332 U.S. 845, 68 S.Ct. 266, 92 L.Ed. 416; Mitchell v. Greenough, 9 Cir., 1938, 100 F.2d 184, certiorari denied, 1939, 306 U.S. 659, 59 S.Ct. 788, 83 L.Ed. 1056; State of Arkansas for Use and Benefit of Temple v. Central Surety & Ins. Corp., D.C.W.D.

claim has been stated, not with jurisdiction. Stapleton v. Mitchell[30] states jurisdiction is conferred by § 1983, but cites as authorities cases which base jurisdiction on § 1343(3). The majority of decisions base jurisdiction specifically upon § 1343(3).[31] Typical of these cases is Stefanelli v. Minard.[32] After stating that § 1983 was the act providing for redress, the Supreme Court founded jurisdiction upon § 1343(3).

 Congress does not have to provide a federal forum for every statutory right it creates. Prior to 1875 certain questions involving federal law were tried before state courts. Even today § 1343(3) can limit a federal court's jurisdiction of a statute granting federal protection.[33] There is no reason why it could not similarly limit the federal jurisdictional scope of § 1983. Whether it has done so or not is not now before us.[34] But we do hold that recovery or relief cannot be had under § 1983 alone, without the jurisdictional basis of § 1343(3).[35] Fourteen Stat. 27, as amended, 42 U.S.C.A. § 1988,[36] does not aid plaintiff in this

Ark.1952, 102 F.Supp. 444; Arroyo v. Puerto Rico Transp. Authority, D.C.D. Puerto Rico 1946, 66 F.Supp. 1022, affirmed, 1 Cir., 1947, 164 F.2d 748.

It should be noted that comments on Bomar v. Keyes, supra, assume § 1343 (3) was also invoked. See Notes, 66 Harv.L.Rev. 1285, 1291 (1952–1953), 43 Ill.L.Rev. 105 (1948–1949).

30. Stapleton v. Mitchell, D.C.D.Kan.1945, 60 F.Supp. 51, appeal dismissed pursuant to stipulation sub. nom. Mitchell v. McElroy, 1945, 326 U.S. 690, 66 S.Ct. 172, 90 L.Ed. 406.

31. E. g., Stefanelli v. Minard, 1951, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138; Hague v. C. I. O., supra, footnote 27; Douglas v. City of Jeannette, supra, note 27; Ortega v. Ragen, 7 Cir., 1954, 216 F.2d 561, certiorari denied, 1955, 349 U. S. 940, 75 S.Ct. 786, 99 L.Ed. 1268; Wall v. King, 1 Cir., 1953, 206 F.2d 878, certiorari denied, 1953, 346 U.S. 915, 74 S. Ct. 275, 98 L.Ed. 411; Bottone v. Lindsley, 10 Cir., 1948, 170 F.2d 705, certiorari denied, 1949, 336 U.S. 944, 69 S.Ct. 810, 93 L.Ed. 1101; Rice v. Elmore, supra, footnote 18; Glicker v. Michigan Liquor Control Commission, 6 Cir., 1947, 160 F.2d 96; Copley v. Sweet, D.C.W.D. Mich.1955, 133 F.Supp. 502; Moffett v. Commerce Trust Co., D.C.W.D.Mo.1949, 87 F.Supp. 438, affirmed, 8 Cir., 1951, 187 F.2d 242; Gordon v. Garrson, D.C. E.D.Ill.1948, 77 F.Supp. 477; Hall v. Hawaiian Pineapple Co., D.C.D.Haw. 1947, 72 F.Supp. 533; Williams v. Miller, D.C.N.D.Cal.1942, 48 F.Supp. 277, affirmed per curiam, 1942, 317 U.S. 599, 63 S.Ct. 258, 87 L.Ed. 489; Mills v. Board of Education of Anne Arundel County, D.C.D.Md.1939, 30 F.Supp. 245, 246, note 1; Moore's Commentary on the U. S. Judicial Code (1949 Ed.), 0.03(39), p. 257.

32. 1951, 342 U.S. 117, 118, 72 S.Ct. 118, 96 L.Ed. 138.

33. McGuire v. Amrein, D.C.D.Md.1951, 101 F.Supp. 414. See Bell v. Hood, D. C.S.D.Cal.1947, 71 F.Supp. 813, 818.

34. This question would only arise where a federal statute which does not provide for the equal protection of the laws gives rise to a right of action under § 1983. As to whether § 1343(3) covers such a situation, compare the cases cited in footnote 33; Notes, 47 Columbia L.Rev. 1082, 66 Harv.L.Rev. 1285, 1291–1295 with the broad language of Hague v. C. I. O., supra, footnote 27, and Note, 43 Ill.L.Rev. 105 (1948–1949).

35. See Bell v. Hood, 1946, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939; Fielding v. Allen, 2 Cir., 1950, 181 F.2d 163, certiorari denied sub. nom. Ogden Corp. v. Fielding, 1950, 340 U.S. 817, 71 S.Ct. 46, 95 L.Ed. 600.

36. "The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and,

regard. It has reference to procedure, not jurisdiction.[37]

Plaintiff alleges another right of action under the Organic Act of Hawaii. He states that this Act is a federal statute within the meaning of § 1983 and § 1343(3). The essence of this claim is not that the failure of the legislature has deprived the plaintiff of his constitutional rights. Rather it is that by virtue of § 55 of the Organic Act itself,[38] the plaintiff is entitled to a reapportioned legislature. Thus he asks a United States district court to enforce the Organic Act, not because it has denied him the equal protection of the laws or of due process, but because it is a right or privilege granted him by a federal statute.

 Section 1983 can give rise to a claim based upon a right or privilege granted by a law of Congress.[39] However, an examination of the Organic Act reveals that § 55 should not be considered a federal statute for purposes of jurisdiction. The Organic Act may be a law of the United States, although limited in geographic scope.[40] Whether it is a law within the meaning of § 1983 and § 1343(3) depends upon the particular provision involved. In construing the Organic Act of Puerto Rico, the Supreme Court held that where a section is concerned with local policy, it would be better to construe it as local law over which federal courts should not take direct jurisdiction.[41] Section 55 is in this category. It does not concern fundamental rights unless wrongly used.

 If these legislative powers are incorrectly applied to the detriment of plaintiff's constitutional rights, another provision of the Organic Act comes into focus. As stated before, § 5 [42] guarantees the fundamental rights of the Constitution to territorial citizens. It involves a national policy, the benefits of which the United States has accorded Hawaii. This section is a law giving rise to original jurisdiction of a United States district court.[43] Pursuant to it, this Court may adjudicate plaintiff's claims for the equal protection of the law arising from a statute of the United States.

 The defendants claim they have not acted under color of any territorial law. The Organic Act is the constitution of Hawaii.[44] As such it functions as local territorial law.[45] The fact that it is the equivalent of constitutional law should not vitiate the effect of § 1983 and § 1343(3).[46] It is but a higher

---

if it is of a criminal nature, in the infliction of punishment on the party found guilty."

37. Schatte v. International Alliance, etc., D.C.S.D.Cal.1947, 70 F.Supp. 1008, affirmed per curiam, 9 Cir., 1948, 165 F. 2d 216.

38. See footnote 10.7.

39. Bomar v. Keyes, supra, footnote 29. But see Note, 16 Geo.Wash.L.Rev. 260 (1947–1948).

40. People of Puerto Rico v. Rubert Hermanos, Inc., 1940, 309 U.S. 543, 550, 60 S.Ct. 699, 84 L.Ed. 916; American Security & Trust Co. v. Commissioners of District of Columbia, 1912, 224 U.S. 491, 32 S.Ct. 553, 56 L.Ed. 856; Arroyo v. Puerto Rico Transp. Authority, 1 Cir., 1947, 164 F.2d 748; Note (1950), 14 A.L.R.2d 992, § 3, p. 1007.

41. People of Puerto Rico v. Rubert Hermanos, Inc., supra, footnote 40.

42. See footnote 7.

43. Arroyo v. Puerto Rico Transp. Authority, supra, 164 F.2d at page 750, footnote 40.
 Since § 5 is federal in character, equitable jurisdiction may be based upon it immediately. See discussion on equitable jurisdiction, infra.

44. First National Bank v. County of Yankton, 1879, 101 U.S. 129, 133, 25 L.Ed. 1046; Carter v. Gear, Second Judge of the Circuit Court of the First Circuit, 1904, 16 Haw. 242, 244; 49 Am.Jur., States, Territories & Dependencies, § 113, p. 326.

45. Laguana v. Ansell, D.C.D.Guam 1952, 102 F.Supp. 919, affirmed per curiam, 9 Cir., 1954, 212 F.2d 207; Guam v. Kaanehe, D.C., 137 F.Supp. 189, (1956); cases cited in footnote 44.

46. Justice Holmes expressed some doubt as to this in Giles v. Harris, 1903, 189

form of statutory law.[47] Anyone under it, as the defendants before us, is acting under color of territorial law. Otherwise it would be possible for a state or territory to avoid enforcement of the Civil Rights Act.

Although not raised by either party, the Court notes a question as to the applicability of § 1983 to the claim before it. Several cases have stated that this act only gives rise to an action for a denial of due process and not for a deprivation of the equal protection of the laws.[48] However, the Supreme Court has spoken contrary to this authority. In Hague v. C. I. O.[49] Mr. Justice Stone states, 307 U.S. at page 526, 59 S.Ct. at page 969:

"It [§ 1983] thus includes the Fourteenth Amendment and such privileges and immunities as are secured by the due process and equal protection clauses, as well as by the privileges and immunities clause of that Amendment. It will also be observed that they are those rights secured to persons, * * * to whom the Amendment in terms extends the benefit of the due process and *equal protection clauses.*" (Emphasis added.)

■ In Lane v. Wilson[50] an action was brought under § 1983 for a violation of the Fifteenth Amendment. The Supreme Court held 307 U.S. at page 274, 59 S.Ct. at page 875, that if there was unequality under the law, the plaintiff had a right of action via § 1983. Glicker v. Michigan Liquor Control Commission[51] also held that the equal protection of the laws was included within the scope of the act. This seems only logical. The Civil Rights Act is not to be narrowly construed.[52] To say a right under the Constitution does not include the equal protection of the laws is a bit arbitrary. It should be noted that many of the cases restricting this act were involved with claims of a somewhat dubious nature. There was also more concern with interpreting 12 Stat. 284, as amended, 42 U.S.C.A. § 1985(3) than § 1983. This narrow holding has been resorted to generally where the courts have in effect ordered a dismissal. In other cases claims under § 1983 for the equal protection of the law were allowed without discussion.[53] We will permit the right of action to be stated under § 1983.

However, if the statute is restricted to denials of due process, we have held such a deprivation exists. The plaintiff has alleged a valid claim within this limitation.

■ The Court also raises the question as to whether § 1343(3) applies to Hawaii. In some contexts "state" may include within its meaning the Territory of Hawaii.[54] We have previously

U.S. 475, 23 S.Ct. 639, 47 L.Ed. 909, but permitted the action. Also see, Note, 26 Tex.L.Rev. 531 (1947–1948); 2 Cyc. Fed.Proc. § 2.374, p. 50, note 49.

47. Willis v. St. Paul Sanitation Co., 1892, 48 Minn. 140, 50 N.W. 1110, 1111, 16 L. R.A. 281.

48. Mitchell v. Greenough, 9 Cir., 1938, 100 F.2d 184, certiorari denied, 1939, 306 U. S. 659, 59 S.Ct. 788, 83 L.Ed. 1056; Jennings v. Nester, 7 Cir., 1954, 217 F. 2d 153, certiorari denied, 1955, 349 U.S. 958, 75 S.Ct. 888, 99 L.Ed. 1281; Ortega v. Ragen, 7 Cir., 1954, 216 F.2d 561, certiorari denied, 1955, 349 U.S. 940, 75 S. Ct. 786, 99 L.Ed. 1268; Whittington v. Johnston, 5 Cir., 1953, 201 F.2d 810, certiorari denied, 1953, 346 U.S. 867, 74 S.Ct. 103, 98 L.Ed. 377; McShane v. Moldovan, 6 Cir., 1949, 172 F.2d 1016;

Bottone v. Lindsley, 10 Cir., 1948, 170 F.2d 705, certiorari denied, 1949, 336 U. S. 944, 69 S.Ct. 810, 93 L.Ed. 1101; Allen v. Corsano, D.C.D.Del.1944, 56 F. Supp. 169.

49. See footnote 27.

50. See footnote 17.
 Both the Hague and Lane cases were decided after the Ninth Circuit decision of Mitchell v. Greenough, supra, footnote 48.

51. 6 Cir., 1947, 160 F.2d 96.

52. Valle v. Stengel, 3 Cir., 1949, 176 F.2d 697.

53. E.G., Holmes v. City of Atlanta, D.C. N.D.Ga.1954, 124 F.Supp. 290, affirmed, 5 Cir., 1955, 223 F.2d 93.

54. Andres v. United States, 1948, 333 U. S. 740, 745, 68 S.Ct. 880, 92 L.Ed. 1055.

held that § 1343(3) did include Hawaii.[55] Another division of this court ruled differently.[56] We adhere to our prior decision and the reasons stated therein. To conclude otherwise would make the Territory a pariah in the field of civil liberties.

In Stainback v. Mo Hock Ke Lok Po [57] the Supreme Court decided that § 266 of the Judicial Code [58] did not include a territory. This section is concerned with state sovereignty, not territorial dependence. Andres v. United States [59] held another section of the Judicial Code did encompass Hawaii within the meaning of "state."

The key factor in these cases is congressional intent. The civil liberties Congress extended to the people of Hawaii, an incorporated territory, are not a diluted version of those obtaining in the states.

"* * * a system of such national character * * * uniform and universal * * * through the entire territorial limits of the country, * * * [should not] be tortured into creating a discrimination and difference in privileges and burdens by reason of locality [unless]

its language must imperatively demand such construction." [60]

The language of § 1343(3) calls for no discrimination against a territory which is specifically included in § 1983. Congress meant to protect the constitutional rights involved in these statutes in courts of the United States. This tribunal has been expressly made such a forum.[61] If § 1343(3) is narrowly construed, we would not be able to protect these rights. The whole tenor of Hague v. C. I. O. and Douglas v. City of Jeannette [62] is contrary to such a construction of this act.

■ Defendants object to jurisdiction upon the ground that this is an original mandamus action. Plaintiff states that § 1983, in conjunction with 42 U.S.C.A. § 1988,[63] authorizes such a suit. We must disagree with both. United States district courts have no original jurisdiction to issue the equivalent relief of writs of mandamus in the absence of constitutional or specific statutory provisions. Such relief may only be issued in aid of original jurisdiction.[64] This applies to rights allegedly secured by the Constitution or laws of the United States.[65] This would include claims under the Civil Rights Act.[66]

---

55. Alesna v. Rice, D.C.D.Haw.1947, 74 F. Supp. 865, affirmed on other grounds, 9 Cir., 1949, 172 F.2d 176; International Longshoremen's & Warehousemen's Union v. Ackerman, D.C.D.Haw.1948, 82 F. Supp. 65, 94–95, reversed on other grounds, 9 Cir., 1951, 187 F.2d 860, agreed with this decision.

56. Mo Hock Ke Lok Po v. Stainback, D.C. D.Haw.1947, 74 F.Supp. 852, reversed on other grounds, 1949, 336 U.S. 368, 69 S.Ct. 606, 93 L.Ed. 741. The question of the applicability of § 1343(3) was not considered therein, 336 U.S. at page 373, 69 S.Ct. at page 609, note 6. However, 336 U.S. at page 381, 69 S.Ct. at page 613, note 25, would indicate the inclusion of a territory within statutory jurisdiction.

57. 1949, 336 U.S. 368, 69 S.Ct. 606, 93 L. Ed. 741.

58. 62 Stat. 928, 964, 968, 28 U.S.C. §§ 1253, 2101, 2281, 2284.

59. See footnote 54.

60. Talbott v. Board of Com'rs Silver Bow County, 1891, 139 U.S. 438, 443, 11 S. Ct. 594, 596, 35 L.Ed. 210.

61. 62 Stat. 907, 28 U.S.C. § 451; Alesna v. Rice, 9 Cir., 1949, 172 F.2d 176.

62. See footnote 27.

63. See footnote 36.

64. Petrowski v. Nutt, 9 Cir., 1947, 161 F. 2d 938, certiorari denied, 1948, 333 U.S. 842, 68 S.Ct. 659, 92 L.Ed. 1126; Insular Police Commission v. Lopez, 1 Cir., 1947, 160 F.2d 673, certiorari denied, 1947, 331 U.S. 855, 67 S.Ct. 1743, 91 L. Ed. 1863; 15 Cyc. Fed.Proc. (3rd Ed. 1953), § 84.24, p. 340 et seq.; Rule 81 (b), Fed.R.Civ.P., 28 U.S.C.

65. Covington & C. Bridge Co. v. Hager, 1906, 203 U.S. 109, 27 S.Ct. 24, 51 L.Ed. 111; In re Higdon, D.C.E.D.Mo.1920, 269 F. 150.

66. Hume v. Mahan, D.C.E.D.Ky.1932, 1 F. Supp. 142, 146, reversed on other grounds,

Statutory delegations must be expressly enumerated.[67] Title 42 U.S.C.A. § 1988 does not aid original jurisdiction in this field either, as it is only procedural in effect.[68]

■ Jurisdiction in this case is founded upon a denial of certain constitutional rights of the plaintiff. We have before us a suit in equity to enforce those rights, as authorized by § 1983. There is no ambiguity in the legislative duty to remedy this situation.[69] If in order to secure redress for the plaintiff, this Court issues an order equivalent to mandamus, it will be in aid of its original jurisdiction. This is no more than is done in the usual civil rights case. It would permanently enjoin a present invasion of the plaintiff's rights under the law.[70] Since plaintiff has alternatively alleged this proposition, he is properly in court.

■ Further objection raised by defendants is that this case is in reality a suit against the Territory of Hawaii. We disagree. The action is against certain territorial officials who have violated constitutional and statutory rights.

They are subject to process of the federal courts so that the person injured by their action may have appropriate relief.[71] The redress sought is not from the Territory but against territorial officials. The plaintiff is not asking the Territory as a sovereign to do anything. He is only requesting the legislature to obey the law in order that the Territory may breathe in accordance with the congressional prescription.[72]

■ The defendants also object to a United States district court's assuming initial equitable jurisdiction in the case.[73] They contend this Court should refrain from interfering with a matter of local law. In the exercise of its discretion, a federal tribunal should not interfere with certain state or territorial judicial proceedings.[74] It should permit local forums to first interpret disputed questions of local law.[75] These courts might construe the questioned provision in such a way as to make unnecessary an appeal to a federal court on a constitutional issue. In Pullman Co. v. Railroad Commission of Texas [76] the lower court ruled that a state agency violated Texas law. The Supreme

1932, 287 U.S. 575, 53 S.Ct. 223, 77 L. Ed. 505, for reasons stated in Wood v. Broom, 1932, 287 U.S. 1, 53 S.Ct. 1, 77 L.Ed. 131, accord, cases cited in footnotes 64 and 65; Note, 1950, 12 A.L.R. 2d 5, 65, § 19.

67. Petrowski v. Nutt, supra, footnote 64; In re Higdon, supra, footnote 65.

68. Schatte v. International Alliance, etc., supra, footnote 37.

69. Compare with United States ex rel. Greathouse v. Dern, 1933, 289 U.S. 352, 53 S.Ct. 614, 77 L.Ed. 1250.

70. As is being done in Brown v. Board of Education of Topeka, Shawnee County, Kan., 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; Id., 1955, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083.

71. Sterling v. Constantin, 1932, 287 U.S. 378, 393, 53 S.Ct. 190, 77 L.Ed. 375.

72. Compare with Larson v. Domestic & Foreign Commerce Corp., 1949, 337 U.S. 682, 687–688, 69 S.Ct. 1457, 93 L.Ed. 1628; Note, 1950, 12 A.L.R.2d 5, 71, § 22.

73. For the distinction between jurisdiction and equitable jurisdiction, see Meredith v. City of Winter Haven, 1943, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9; 30 C. J.S., Equity, §§ 9, 10, 11, pp. 327–331.

74. Stainback v. Mo Hock Ke Lok Po, 1949, 336 U.S. 368, 69 S.Ct. 606, 93 L.Ed. 741; Douglas v. City of Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Ackerman v. International Longshoremen's & Warehousemen's Union, 9 Cir., 1951, 187 F.2d 860; Alesna v. Rice, 9 Cir., 1949, 172 F.2d 176.

75. Meredith v. City of Winter Haven, 1943, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9; Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S. Ct. 643, 85 L.Ed. 971; Romero v. Weakley, 9 Cir., 1955, 226 F.2d 399; Gregg v. Winchester, 9 Cir., 1949, 173 F.2d 512, certiorari denied, 1949, 338 U.S. 847, 70 S.Ct. 87, 94 L.Ed. 518.

76. D.C.W.D.Tex.1940, 33 F.Supp. 675, reversed, 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971.

Court reversed because Texas tribunals should be given the first opportunity to interpret state law. The courts of the Territory of Hawaii should initially decide any problems arising from an interpretation of the Organic Act. Thus even if § 55, as a law of the United States, gave jurisdiction to this Court, we would refuse to hear problems arising from it. Alone it is concerned with purely local affairs.[77] It is only when the powers of § 55 are used or not used so as to violate the Constitution of the United States that a federal court may intervene.

In the present case there is no dispute as to the interpretation of the Organic Act.[78] The validity of § 55 is not in question. The current effect of it is at issue. It states and has stated for fifty-five years that something is to be done: reapportionment of the legislature. It has not been done. An issue before us is whether the inaction of the legislature in this matter has deprived the plaintiff of certain constitutional rights. We have held that the defendants' conduct has violated the equal protection of the laws and due process. No interpretation of any provision of the Organic Act could change this result.

In this situation relief under the Civil Rights Act in a federal court is not dependent upon prior pursuit of redress in a local forum.[79] As stated by Mr. Justice Frankfurter in Lane v. Wilson,[80] describing a civil rights situation, 307 U.S. at page 274, 59 S.Ct. at page 875:

"Barring only exceptional circumstances, * * *, or explicit statutory requirements, * * * resort to a federal court may be had without first exhausting the judicial remedies of state courts."

An exception exists, as stated before, if an interpretation of local law could avoid the constitutional difficulty. If it cannot, the litigant has his choice of forums. There is no policy in the federal courts excluding cases because they involve local law.[81] It does not matter that a local court could grant effective relief. The plaintiff before us has a right to invoke a United States district court's jurisdiction.[82] In so doing he has not poised a question of interpretation which might cause a discretionary refusal of jurisdiction. It is the duty of this Court to hear the entire case and grant the proper relief.

The basic question before us is whether a United States district court should exercise its equitable jurisdiction to cause a reapportionment of a territorial legislature. Colegrove v. Green[83] definitely decided that a case involving voting districts was a judiciable question over which a federal court had jurisdiction. Three justices held the court lacked jurisdiction or should not exercise what jurisdiction it had.[84] Three

77. People of Puerto Rico v. Shell Co., 1937, 302 U.S. 253, 261–263, 58 S.Ct. 167, 82 L.Ed. 235, see footnote 43 as to equitable jurisdiction founded upon § 5.

78. The Census of Population: 1950, supra, footnote 14, Table 7, pp. 52–8, contains the total number of inhabitants in each legislative district. The number of territorial citizens in each of these areas has not been published. However, judicial notice is taken that such information is available at the United States Bureau of Census. It can be ascertained at the proper time.

79. Lane v. Wilson, 1939, 307 U.S. 268, 274, 59 S.Ct. 872, 83 L.Ed. 1281; Romero v. Weakley, supra, footnote 75; Cooper v. Hutchinson, 3 Cir., 1950, 184 F.2d 119,

124; Stapleton v. Mitchell, supra, footnote 30; Note, 1950, 13 A.L.R.2d 390, § 39, p. 550, § 41, p. 554, § 44, p. 563.

80. See footnote 79.

81. Meredith v. City of Winter Haven, supra, 320 U.S. at page 236, 64 S.Ct. at pages 11, 12, footnote 75.

82. Romero v. Weakley, supra, footnote 75.

83. 1946, 328 U.S. 549, 66 S.Ct. 1198, 90 L. Ed. 1432.

84. Compare comments on what exactly was decided in Cook v. Fortson, 1946, 329 U.S. 675, 678, 67 S.Ct. 21, 22, note 7, 91 L.Ed. 596 and Remmey v. Smith, D.C.E.D.Pa.1951, 102 F.Supp. 708, 710, note 11, appeal dismissed, 1952, 342 U. S. 916, 72 S.Ct. 368, 96 L.Ed. 685. How-

justices felt jurisdiction existed and should be exercised. The deciding vote was cast by Mr. Justice Rutledge.[85] He stated jurisdiction was present, but should not be exercised. Thus a majority held that a justiciable question was before it, but that in the discretion of the court, equitable jurisdiction should not be exercised.[86]

MacDougall v. Green [87] did not change this. The Supreme Court held therein that it was permissible to require candidates for state-wide office to have state-wide geographic support. No local law forbade this; policy reasons might support it. This is in contradiction to the case before us, where territorial law forbids what is taking place. South v. Peters [88] concerned a state's desire to regionally allocate votes in elections. Here again no local law forbade such action.

The reasons preventing the Supreme Court from acting in Colegrove v. Green are not present here. The Territory of Hawaii does not have the same relation to this Court that the State of Illinois has to a federal court within its boundaries. Hawaii is a political subdivision of the United States. It has the same relation to Congress a city or county has to a state. The legislature of the Territory is similar to a county governing board. It has no sovereignty of its own.[89]

This relationship is the distinguishing factor between Colegrove v. Green and the suit before us. Mr. Justice Rutledge

refused to extend equitable jurisdiction in that case because it would pitch the federal courts into the delicate area of state-federal relations. He did not believe a court of the United States should become involved in questions concerning the proper functions of state officials. As shown, no such relationship exists here. He also considered the shortness of time before elections. This factor is not relevant to us, as there is nearly a year before local elections.

Mr. Justice Frankfurter emphasized that no court could affirmatively re-map Illinois districts. The only alternative was an at-large election. He considered this to be worse than a "rotten borough" apportionment. Mr. Justice Rutledge thought this type of election was another circumstance to be taken into consideration. Mr. Justice Black did not consider it sufficient to warrant a refusal to exercise equitable jurisdiction.

However, the nature of this Court's relationship to the territorial legislature does not present this problem.[90] We can order affirmative action to readjust legislative districts to population needs. The cases of Connett v. City of Jerseyville [91] are authority for a federal court to mandate an inferior legislative body to take proper action. These decisions involve the affirmative action of mandamus by a United States district court to force a city council to obey state law. Here we are concerned with ordering officials of a political subdivision of the United States to obey the law. This

---

ever, South v. Peters, 1950, 339 U.S. 276, 70 S.Ct. 641, 94 L.Ed. 834, indicates it was a want of equitable jurisdiction that was involved.

85. Two judges were absent.

86. It thus becomes unnecessary to decide exactly what is the full explanation of Giles v. Harris, 1903, 189 U.S. 475, 23 S.Ct. 639, 47 L.Ed. 909. In Colegrove v. Green, supra, footnote 83, compare 328 U.S. p. 552 with p. 573, 66 S.Ct. 1199 with 1212. The best explanation of Giles v. Harris is probably contained in Hume v. Mahan, supra, footnote 66.

87. 1948, 335 U.S. 281, 69 S.Ct. 1, 93 L.Ed. 3.

88. 1950, 339 U.S. 276, 70 S.Ct. 641, 94 L. Ed. 834.

89. First National Bank v. County of Yankton, 1879, 101 U.S. 129, 25 L.Ed. 1046; Talbott v. Board of Com'rs of Silver Bow County, 1891, 139 U.S. 438, 446, 11 S.Ct. 594, 35 L.Ed. 210; Cincinnati Soap Co. v. U. S., 1937, 301 U.S. 308, 317, 57 S.Ct. 764, 81 L.Ed. 1122; Stainback v. Mo Hock Ke Lok Po, supra, footnote 74; 49 Am.Jur., States, Territories and Dependencies, § 113, p. 326.

90. See footnote 61.

91. 7 Cir., 1941, 125 F.2d 121; Id., 7 Cir., 1940, 110 F.2d 1015; Id., 7 Cir., 1938, 96 F.2d 392.

would be in accordance with their sworn duty as legislators.

■■■ The final Connett v. City of Jerseyville decision [92] affirmed a district court's decree. This mandate had required the city, through its proper corporate officials, to adopt an adequate utility rate schedule to pay certain municipal debts. The Court of Appeals held that when the lower court so ordered, it was not making a rate schedule, but was compelling the city to do its duty. The city, not the court, was exercising legislative power. When a political subdivision is under a duty to act and does not, this is not an act of discretion. It is an arbitrary act contrary to law. The city or county retains the discretion to proceed in any manner fitting. But each must exercise its discretion to a proper end in conformity with the law.[93]

These same principles have been applied to reapportionment proceedings against inferior legislative bodies.[94] They could be applied to the case before us to enforce positive action by the legislature in reapportioning legislative districts. This is not a supervision of any election. It is the enforcement of an unequivocal duty.[95]

However, this does not mean the court will necessarily issue such an order. Mr. Justice Rutledge did not place full reliance upon the one factor of an at-large election. It may well be that such an election could be an effective method of securing redress for the plaintiff. This type of election was ordered by the Supreme Court in Smiley v. Holm.[96] In Brown v. Saunders [97] the Supreme Court of Virginia ordered an at-large election despite an explicit provision of the Virginia constitution to the contrary. One fundamental principle, the right of an equal vote, was allowed to outweigh another, the lesser right to districted elections.

Any order issued would not be put in jeopardy by a change in membership in the legislature or other officials involved.[98] The availability of declaratory

92. 7 Cir., 1941, 125 F.2d 121. The first case, 7 Cir., 1938, 96 F.2d 392, held the plaintiff was entitled to an increase in the utility rates of a municipally owned water system. The lower court was ordered to hold a hearing to determine the amount. In the second case, 7 Cir., 1940, 110 F.2d 1015, the circuit court reversed the district court's fixing of rate schedules. It held that federal courts cannot determine rates, nor make them effective by judicial action. They did have the jurisdiction to determine the amount due and compel the defendants to perform its duties by a decree. This order would require defendants to adopt a sufficient rate schedule.

93. Also see Board of County Com'rs of Marshall County v. United States, 10 Cir., 1945, 152 F.2d 540, 542, certiorari denied, 1946, 327 U.S. 805, 66 S.Ct. 963, 90 L.Ed. 1030; Parrish v. Wright, Tex. Civ.App., 1927, 293 S.W. 659; Leftridge v. City of Sacramento, 1943, 59 Cal.App. 2d 516, 139 P.2d 112; 37 Ill.L.Rev., supra, footnote 1, p. 40; Ferris, Extraordinary Legal Remedies, §§ 206, 207; 55 C. J.S., Mandamus, § 123, pp. 210–211, § 124b(2), p. 212, § 127, p. 214.

94. People ex rel. Baird v. Board of Sup'rs, 1893, 138 N.Y. 95, 33 N.E. 827, 833–834, 20 L.R.A. 81. This case was decided prior to the adoption of the 1894 constitution of New York State, which specifically authorized the courts to hear reapportionment problems. Attorney General v. Suffolk County Apportionment Com'rs, 1916, 224 Mass. 598, 113 N.E. 581, ordered similar action. This power was founded upon a legislative act. Mandamus in State ex rel. Herbert v. Bricker, 1942, 139 Ohio St. 499, 41 N.E.2d 377, was based upon specific constitutional authorization.

95. Compare with Johnson v. Stevenson, 5 Cir., 1948, 170 F.2d 108, certiorari denied, 1949, 336 U.S. 904, 69 S.Ct. 491, 93 L.Ed. 1069.

96. 1932, 285 U.S. 355, 52 S.Ct. 397, 76 L. Ed. 795; also see Broom v. Wood, D.C. S.D.Miss.1932, 1 F.Supp. 134, reversed on other grounds, 1932, 287 U.S. 1, 53 S.Ct. 1, 77 L.Ed. 131; Hume v. Mahan, supra, footnote 66.

97. 1932, 159 Va. 28, 166 S.E. 105.

98. Murphy v. Utter, 1902, 186 U.S. 95, 22 S.Ct. 776, 46 L.Ed. 1070; Irwin v. Wright, 1922, 258 U.S. 219, 42 S.Ct. 293, 66 L.Ed. 573; Rule 25(d), Fed.R. Civ.P., 28 U.S.C.; 4 Moore's Federal Practice (2nd Ed. 1950) § 25.09, p. 529.

236

relief could dissolve problems incident to composing legislators into a legislature.

We believe there should be a broader ground for sustaining the action of this Court than the special nature of territorial-federal relations. The Supreme Court has stricken any attempts to discriminate in elections because of race, creed or color. There was nothing delicate in the way the court traced a three-step process to prevent Negroes from voting in Texas.[99] Many states were recently ordered to revamp their entire school systems.[100] The impact of this decision on the mores of the states involved is tremendous. The assumed delicacy of state-federal relations bowed to the principles of the Constitution.

A classification which discriminates geographically has the same result. It deprives a citizen of his constitutional rights. Reasons of delicacy should no longer stay the judicial hand. The people of Hawaii need no court intervention to insure a democratic school system. They do need judicial aid in achieving a democratic legislature. Any distinction between racial and geographic discrimination is artificial and unrealistic. Both should be abolished.

We are not saying each citizen must always have the same vote. Political institutions may invoke geographic representation. However, where the fundamental law provides for equal rights of suffrage each citizen should have the right of judicial redress if the law is violated. Otherwise his rights under the law can be disregarded with impunity, as indeed they now are in Hawaii and many states.

The time has come, and the Supreme Court has marked the way, when serious consideration should be given to a reversal of the traditional reluctance of judicial intervention in legislative reapportionment.[101] The whole thrust of today's legal climate is to end unconstitutional discrimination. It is ludicrous to

preclude judicial relief when a mainspring of representative government is impaired. Legislators have no immunity from the Constitution. The legislatures of our land should be made as responsive to the Constitution of the United States as are the citizens who elect the legislators.

Motion denied.

---

**99.** Terry v. Adams, 1953, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152.

**100.** Brown v. Board of Education of Tope-

ka, Shawnee County, Kan., 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873.

**101.** See footnote 1.