## JOHNSON et al. v. STEVENSON.
### No. 12529.

United States Court of Appeals
Fifth Circuit.

Oct. 7, 1948.

Raymond Buck, of Fort Worth, Tex., Dallas Scarborough, of Abilene, Tex., B. D. Tarleton and Luther E. Jones, Jr., both of Corpus Christi, Tex., John H. Crooker, Sr., of Houston, Tex., Alvin J. Wirtz, John Cofer and Everett L. Looney, all of Austin, Tex., and James V. Allred, of Houston, Tex., for appellant Lyndon B. Johnson.

A. W. Moursund, of Johnson City, Tex., and Everett L. Looney, of Austin, Tex., for appellants Streigler and others.

T. R. James, of Fort Worth, Tex., Dan Moody, of Austin, Tex., C. C. Renfro, of Dallas, Tex., and Josh H. Groce, of San Antonio, Tex., for appellee.

Before HUTCHESON, Chief Judge, and SIBLEY and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

On September 15, 1948, Appellee Stevenson filed this suit in the district court against Appellant Johnson and others to

stop by injunction the certifying by the officers of the Democratic Party in Texas of the name of Johnson as the nominee of that party for United States Senator as a result of a Democratic primary election; to prevent his name as such being placed on the official ballots for the general election to be held November 2, 1948; and for a cancellation of such certification if made; and a declaration that Stevenson is the true nominee. The other defendants are the party officers who are charged with the duty of certifying; the Secretary of State to whom the certificate is addressed and who prepares the form of ballot; and the members of the election board of Tarrant County, who are alleged to be proper representatives of all the board members in the 253 other counties of the State who are too numerous to be brought before the Court. A restraining order was at once granted and a hearing set for a temporary injunction. At the hearing Johnson filed a motion to dismiss on various grounds, including these: that the relief sought is in essence a contest of the primary election and the Court has no jurisdiction to hear and determine such election contest; that the Court has no jurisdiction to determine the right and title to the Democratic nomination for United States Senator, and that such jurisdiction is expressly denied by 28 U.S.C.A. § 1344; that no deprivation of a right or privilege secured by the Constitution or laws of the United States is alleged, but only of a right to a party nomination under the election laws of the State of Texas, as to which there is no jurisdiction in the federal district court; and that there is no jurisdiction in equity to nullify a certificate of nomination duly made under the laws of Texas in favor of Johnson, who is a person qualified to hold the office, in order to substitute another as nominee. Johnson also filed under oath what he calls an opposition to the temporary injunction which takes issue with some of the factual allegations of the petition and proposes at a proper time and in a proper forum to show illegal votes in larger numbers which were counted for Stevenson than those Stevenson claims were fraudulently counted for Johnson. The other defendants filed motions to dismiss as to them and answers,

but none of these has any real interest in the result or is charged with any personal misconduct, and they need not be further noticed. The motions to dismiss were overruled. Evidence was introduced by both Stevenson and Johnson tending to support their contentions of fact. The Court made no specific findings of fact, but held generally that the facts were with the plaintiff and granted a temporary injunction on September 22, 1948, "for the reason that there was evidence of fraud in the official returns from certain election officials in Jim Wells, Zapata, and possibly other counties, to the State Democratic Executive Committee, without which there would have been a change in the official certification by the officers of the State Convention as to who was the Democratic nominee for the office of United States Senator." The injunction forbids the certifying and reporting to the election boards of all the counties that Johnson is the Democratic nominee, and forbids the boards to prepare and distribute ballots carrying Johnson's name for use in the election. The appeal is from the grant of this temporary injunction.

We are of opinion that whatever may be the truth as to the fraudulent returns from certain precincts in the named counties, and whatever may be the truth as to illegal votes elsewhere which are claimed as more than an offset, the subject matter is not one to be taken cognizance of by the district court for the exercise of equitable relief. The object to be attained is precisely that of a contest of an election, the evidence so far heard is all appropriate to such a contest, as is that proposed to be taken by one or more masters which the record shows are to be appointed to go to all of the counties in which illegal returns or voting has been or may by amendment be alleged to have occurred. The Texas Statutes afford machinery for such a contest as part of their provision for both party nominations and final elections. It is urged that there is not time to review a statewide primary by such a contest before the general election comes on. But if there were no provision at all for contesting the result of a primary it would not give a district court jurisdic-

110

tion which it lacks. The Constitution, Art. I, Sec. 5, after all makes each House of Congress the final judge of the qualifications, elections, and returns of their respective members; and if a State, as Texas has done, makes nominations by a primary to be a part of its election machinery, and if, as is alleged here, Democratic nomination insures election, no reason occurs to us why this constitutionally provided judgment of the election should not reach back to the nomination; and we judicially know that such Congressional investigations have included primaries.

■ The jurisdiction of the district court is limited to those cases within Art. III, Sec. 2 of the Constitution over which an Act of Congress has given it jurisdiction. The petition refers us to Sec. 1343 of Title 28 of the United States Code as recently revised and enacted, 28 U.S.C.A. § 1343, entitled "Civil Rights", and to Sec. 43 of Title 8 of the U.S.C.A.Code in the chapter on Civil Rights entitled "Civil Action for deprivation of rights". Both sections use equivalent language, that of Sec. 43 being: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." The redress here chosen is a suit in equity. The right claimed is the Democratic nomination as United States Senator in a primary held under the laws of Texas, which is alleged to be a right of property exceeding $3,000 in value because Democratic nomination insures final election and the emoluments of the office far exceed that sum or value. We may assume without deciding that this nomination is the equivalent of election and that the right to the election is really in controversy. We then face Sec. 1344 of Title 28 entitled "Election Disputes", which does give the district court jurisdiction over such disputes if the sole question arises out of the denial of the right to vote on account of race,

color or previous condition of servitude, and limits the jurisdiction to the determination of the right to vote. No such question is raised in this case; but if it were, the section expressly excludes disputes concerning the office of "elector of President or Vice President, United States Senator, Representative in or delegate to Congress, or member of a State legislature." This is a dispute about the office of United States Senator. In this section there is a manifest purpose to keep the judicial department from intervening, even by the usually available law writ of quo warranto, in the election of these high functionaries in the executive and legislative departments. According to the common law there was no right at all to contest in a court any public election, because they belong to the political branch of the government and are beyond the control of judicial power, and the only remedy in the nature of an election contest was a quo warranto or an information in that nature. 29 C.J.S., Elections, § 246. This explains the words in Sec. 1344 "to recover possession of any office", which would be the object of a quo warranto. The aim of the section is to enable the district court to interfere in elections only to the limited extent it prescribes and to exclude it altogether from interfering with the election of a Senator or with the constitutional right of the Senate to judge of his election in all its steps or stages.

But if Sec. 1344 has no application because a party nomination is not an office, and if Sec. 1343 is to be applied, we get no further. Its words, as set forth in Sec. 43 of Title 8, were before the Supreme Court in Giles v. Harris, 189 U.S. 475, 23 S.Ct. 639, 47 L.Ed. 909, which was a case concerning the right of Negroes to register for voting in Alabama, which was brought by the excluded voters themselves. Their standing to complain under this statute had just previously been established, as it has been recently confirmed by Smith v. Allright, 321 U.S. 649; 64 S.Ct. 757, 88 L.Ed. 987, 151 A.L.R. 1110, in the Supreme Court, and by Chapman v. King, 5 Cir., 154 F.2d 460, in this Court. But Justice Holmes for the Court said, 189 U.S. page 486, 23 S.Ct. page 642: "It seems to us impossible

to grant the equitable relief which is asked. It will be observed, in the first place, that the language of § 1979 (now Section 43 of Title 8) does not extend the sphere of equitable jurisdiction in respect of what shall be held an appropriate subject-matter for that kind of relief. * * * They allow a suit in equity only when that is the proper proceeding for redress, and they refer to existing standards to determine what is a proper proceeding. The traditional limits of proceedings in equity have not embraced a remedy for political wrongs. Green v. Mills [4 Cir.], 69 F. 852, 853, 30 L.R.A. 90." To Green v. Mills may be added a host of authorities: 18 Am.Jur., Elections, Sec. 272; 30 C.J.S., Equity, § 66 and cases cited. Blackman v. Stone, D.C., 17 F.Supp. 102, by three judges, contains a review of the federal cases. Turman v. Duckworth, D.C., 68 F.Supp. 744, is also a recent case by three judges. Appeals in both cases were dismissed in the Supreme Court.

■■ But Stevenson does not have the standing of a voter who is being discriminated against contrary to the Constitution and whose right is clearly secured by it. He is here claiming a political nomination by a primary under laws of Texas. As was remarked in United States v. Gradwell, 243 U.S. 476, 488, 489, 37 S.Ct. 407, 61 L.Ed. 857, in applying the similar provisions of the Criminal Statute then Sec. 19 of the Criminal Code, now Sec. 241 of Title 18 U.S.C.A., to a nominating primary, there is no applicable provision of the federal Constitution or statutes which secures the rights of a candidate for nomination; and the distinction between the personal right of the voter and the general right of a candidate to a pure final election was made in United States v. Bathgate, 246 U.S. 220, 226, 227, 38 S.Ct. 269, 62 L.Ed. 676. We have found no case holding that one claiming a nomination in a primary held under state law, though it be a part of the state election machinery, has any right secured by the laws of the United States. We have here no question of votes excluded contrary to the Constitution, but only of frauds and illegalities under the Texas law. The persons alleged to have perpetrated the frauds are not even parties. We are of opinion, both on the words of Sec. 1343 of Title 28 and under the broad policy indicated in Sec. 1344, that there is here no case for interference by a federal court of equity in a senatorial primary; that the injunction ought not to have been granted; and that the motion to dismiss ought now to be sustained. We can order dismissal on this interlocutory appeal. Smith v. Vulcan Iron Works, 165 U.S. 518, 17 S.C. 407, 41 L.Ed. 810, and cases following it.

The order of injunction is set aside and the cause is remanded with direction to dismiss the petition.

Reversed with direction.