Richard D. McINTYRE, et al.,
Plaintiffs,

v.

Thomas P. O'NEILL, Jr., et
al., Defendants.

Civ. A. No. 85–528.

United States District Court,
District of Columbia.

March 1, 1985.

Order on Remand May 9, 1985.

John R. Bolton, Michael J. Coursey, Covington & Burling, Washington, D.C., Theodore Lockyear, Lockyear & Kornblum, Evansville, Ind., Lawrence J. Halloran, Legal Counsel, National Republican Congressional Committee, Washington, D.C., for plaintiffs.

Steven R. Ross, Charles Tiefer, Michael L. Murray, U.S. House of Representatives, Washington, D.C., for defendants.

## MEMORANDUM OPINION

### JUNE L. GREEN, District Judge.

This matter is before the Court on defendants' motion to dismiss, plaintiffs' opposition thereto, defendants' reply to plaintiffs' opposition, oral argument on the motion, and the entire record herein. For the reasons set forth below, the Court grants defendants' motion and dismisses this action.

Plaintiffs Richard D. McIntyre and Everett Robertson, Jr., on February 11, 1985, brought suit against two hundred and forty-seven Democratic Party members of the United States House of Representatives,[1] and three officers of the House of Representatives. Plaintiffs seek to have the Court issue a permanent injunction restraining all defendants from taking any action which would deny plaintiff McIntyre the right to be seated as the Representative of the Eighth Congressional District to the 99th Congress. Complaint at ¶ 276(3)(A). Plaintiffs also seek to have the Court enjoin defendant Thomas P. O'Neill, Jr., Speaker of the House of Representatives, from refusing to administer the oath of office to plaintiff McIntyre as a Member of the 99th Congress; enjoin defendant Benjamin J. Gutherie, Clerk of the House of Representatives, from excluding plaintiff McIntyre from an office in a House office building and from denying him any of the rights and privileges to which he claims he is entitled as a Member of the 99th Congress; enjoin defendant Jack Russ, Sergeant-at-Arms of the House of Representatives, from refusing to perform for plaintiff McIntyre such duties and services he is allegedly required to perform for plaintiff; and enjoin defendant James T. Malloy, Doorkeeper of the House of Representatives, from refusing to admit plaintiff McIntyre to the floor of the House of Representatives for the purposes of voting and addressing the Members of the House. Complaint at ¶¶ 276(3)(B), (C), (D), (E).

Defendants, in response to plaintiffs' complaint, filed on February 13, 1985, a motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectively.[2]

## I.

The following allegations have been asserted in plaintiffs' complaint.[3]

---

1. On February 12, 1985, plaintiffs noticed a voluntary dismissal of twenty-six defendants pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

2. On February 13, 1985, defendants also filed a motion for expedited schedule, requesting a prompt hearing on its motion to dismiss. Plaintiffs did not oppose this motion, and the parties entered a stipulation as to an expedited briefing and hearing schedule to resolve the questions raised in the motion to dismiss.

   On March 1, 1985, the date of the hearing for defendants' motion to dismiss, plaintiffs moved to postpone oral argument on the motion. The Court orally denied plaintiffs' motion, believing that because this matter involves a challenge to the powers of the House of Representatives, defendants' motion to dismiss should "be given the most expeditious treatment by [the] [C]ourt[]...." *See Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 511 n. 17, 95 S.Ct. 1813, 1825 n. 17, 44 L.Ed.2d 324 (1975).

3. In evaluating a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all material facts alleged in the complaint. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Smith v. Gross*, 604 F.2d 639, 641 n. 1 (9th

On November 6, 1984, Indiana's Eighth Congressional District held its election for United States Representative.

On December 13, 1984, the Indiana Secretary of State certified plaintiff McIntyre as the winner of the election. Also on December 13, the Indiana Governor signed plaintiff McIntyre's certificate of election and forwarded it to defendant Gutherie.

On January 3, 1985, before plaintiff McIntyre could be sworn in as a Member of the House of Representatives, the House passed House of Representatives Resolution Number 1 ("House Resolution 1"), which states:

*Resolved.* That the question of the right of Frank McCloskey or Richard McIntyre to a seat in the Ninety-ninth Congress from the Eighth Congressional District of Indiana shall be referred to the Committee on House Administration, when elected, and neither Frank McCloskey nor Richard McIntyre shall be sworn until the Committee on House Administration reports upon and the House decides such question. For each day during the period beginning on the date on which this resolution is agreed to and ending on the day before the date on which the House decides such question, Frank McCloskey and Richard McIntyre shall each be paid an amount equal to the daily equivalent of the annual rate of basic pay payable to a Member of the House. For the period beginning on the date on which this resolution is agreed to and ending on the date on which the House decides such question, the Clerk of the House shall provide for clerical assistants in the manner provided by law for the case of death or resignation of a Member and shall otherwise perform full administrative functions with respect to the Eighth Congressional District of Indiana. There shall be paid from the contingent fund of the House such sums as may be necessary to carry out this resolution.

Cir.1979); *Asociacian De Reclamantes v. United Mexican States,* 561 F.Supp. 1190, 1192 (D.D.C.

Complaint at ¶ 264; Cong.Rec. H4–5 (daily ed. Jan. 3, 1985).

The vote on House Resolution 1 was Yeas 238 to Nays 177. The vote was strictly along party lines.

Since the passage of House Resolution 1, plaintiff McIntyre has attempted to fulfill the duties of a Member of the House of Representatives but has been prohibited from doing so.

On February 7, 1985, Minority Leader Robert H. Michel introduced House of Representatives Resolution Number 52 ("House Resolution 52") which provides:

Whereas, Richard D. McIntyre won the November 6, 1984, election in the Eighth Congressional District of Indiana by 34 votes according to the certificates of election filed by the county clerks from the District's 15 counties; and

Whereas, the Indiana Secretary of State, Edwin J. Simcox, acting in accordance with his duties as set forth in the Indiana Code (Ann.Sec. 3–1–26–9), certified Richard D. McIntyre as the Representative from Indiana's Eighth Congressional District; and

Whereas the Clerk of the House stated on January 3, 1985 in opening the 99th Congress that he had "prepared the official roll of the Representatives-elect" which included McIntyre's name. The Clerk stated: "Certificates of election covering the 435 seats in the 99th Congress have been received by the Clerk of the House of Representatives, and the names of these persons whose credentials show that they were regularly elected as Representatives in accordance with the laws of their respective States and of the United States will be called." McIntyre's name was called and he cast his vote for Robert H. Michel as Speaker of the House of Representatives; and

Whereas the majority of the House of Representatives on January 3, 1985 voted in House Resolution 1 not to seat Richard D. McIntyre as Representative from Indiana's Eighth Congressional Dis-

1983), *aff'd,* 735 F.2d 1517 (D.C.Cir.1984).

trict despite has [sic] certificate of election issued pursuant to the laws of Indiana; and

Whereas House Resolution 1 is contrary to the precedents of the House of Representatives in that the holder of a certificate of election not tainted by fraud or irregularities has previously been granted a prima facie right to a seat with the final right being referred to the Committee on House Administration; and

Whereas Richard D. McIntyre received 418 votes more than Francis X. McCloskey in a recount of the ballots cast in Indiana's Eighth Congressional District pursuant to Indiana Code (Ann.Sec. 3–1–27 et seq.); Now, therefore be it

*Resolved,* That the Speaker is hereby authorized and directed to administer the oath of office to the gentleman from Indiana, Mr. Richard D. McIntyre.

*Resolved,* That the question of the final right of Mr. McIntyre to a seat in the 99th Congress is referred to the Committee on House Administration.

Complaint at ¶ 267, Cong.Rec. H334 (daily ed. Feb. 7, 1985).

Defendant Wright moved to refer House Resolution 52 to the Committee on House Administration. His motion was adopted by a vote of 221 to 180. Again, this vote was done along party lines with all 221 Yeas cast by Democratic Members of the House. As of the date of this opinion, plaintiff McIntyre has not been seated as a Member of the House.

On February 11, 1985, plaintiff McIntyre and plaintiff Robertson, a registered voter in the Eighth Congressional District of Indiana, filed suit in this Court. In Count I of the complaint plaintiffs allege that the House defendants failed to follow due-process requirements in violation of the Fifth Amendment and of Article I, Section 5, Clause 1 of the Constitution by departing from House precedent and failing to seat plaintiff McIntyre.

Plaintiffs further allege in Count II of the complaint that defendants' failure to seat plaintiff McIntyre denies plaintiff Robertson, and all other citizens of the Eighth

Congressional District of Indiana, the rights of free speech and association and due process of law by denying them their right to be represented in the 99th Congress.

## II.

In their motion to dismiss defendants argue that the Court does not have jurisdiction over the subject matter of this case and that plaintiffs assert a claim for which relief cannot be granted because the matter involved is a nonjusticiable political question.

### A. *Jurisdiction*

Plaintiffs assert as basis for jurisdiction in this matter, *inter alia,* section 1331 of Title 28, United States Code. That section provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. There can be no dispute that plaintiffs' cause of action "aris[es] under the Constitution." *Id.*

█ In the complaint plaintiffs set forth three constitutional claims, alleging that defendants violated plaintiffs' right to due process as protected by the fifth amendment, and rights to free speech and association as protected by the first amendment. They further allege that defendants violated Article I, Section 5, Clause 1 of the Constitution which resulted in plaintiff McIntyre's failure to be seated as a Member of the House. "Since the complaint plainly sets forth a case arising under the Constitution, the subject matter is within the federal judicial power defined in Art. III, § 2, and so within the power of Congress to assign to the jurisdiction of the District Courts. Congress has exercised that power in [28 U.S.C. § 1331]." *See Baker v. Carr,* 369 U.S. 186, 200, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962). Accordingly, the Court has subject-matter jurisdiction over this action.

### B. *Justiciability*

█ Merely because a court has determined that it has jurisdiction over an ac-

tion, that does not end its inquiry as to whether it may address the merits of the case. A court must also determine whether the action is justiciable or, more specifically with reference to this case, whether the matter involves a political question which should not be resolved by a Federal court. *See Metzenbaum v. FERC*, 675 F.2d 1282, 1287 (D.C.Cir.1982) ("the political question doctrine ... is concerned with whether an issue is 'appropriate for judicial deliberation.'" (citation omitted)). "'In determining whether a question falls within [the political question] category, the appropriateness under our system of government of attributing finality to the action of the political departments ... [is a] dominant consideration[ ].' ... The nonjusticiability of a political question is primarily a function of the separation of powers." *Baker v. Carr*, 369 U.S. at 210, 82 S.Ct. at 706 (citation omitted); *see also* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3534.1 ("Political question doctrine takes its name from the conclusion that in the separation of federal powers, certain matters are confined to the political branches.") In analyzing the political question doctrine a court must always be mindful of the constitutional principle of separation of powers between coordinate branches of government.

On the surface of any case held to involve a political question there must be at least one of the following "formulations": a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr*, 369 U.S. at 217, 82 S.Ct. at 710.

The Court's principal focus is on the first criterion as set forth above: whether in the Constitution there is a "textually demonstrable commitment", *id.*, to the House of Representatives which gives it the power to deny Mr. McIntyre a seat in the House with all the rights and privileges associated with that position.

■ In looking to the Constitution, Article I, Section 5, Clause 1 provides: "Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members...." U.S. Const. Art. I, § 5, cl. 1. On their face, plaintiffs' claims do involve express provisions of the Constitution. Further, numerous courts have found specifically that the judgment of election to office of congressmen resides within that House of Congress. *Rayner v. The Chicago Board of Election Commissioners*, No. 78 C 5116, slip op. (N.D.Ill. Mar. 14, 1979), *aff'd mem.*, 636 F.2d 1222 (7th Cir.1980); *Manion v. Holzman*, 379 F.2d 843, 845 (7th Cir.), *cert. denied*, 389 U.S. 976, 88 S.Ct. 479, 19 L.Ed.2d 470 (1967); *Johnson v. Stevenson*, 170 F.2d 108, 109 (5th Cir.1948), *cert. denied*, 336 U.S. 904, 69 S.Ct. 491, 93 L.Ed. 1069 (1949); *Application of James*, 241 F.Supp. 858, 860 (S.D.N.Y.1965); *Peterson v. Sears*, 238 F.Supp. 12, 13 (N.D.Iowa 1964); *Keogh v. Horner*, 8 F.Supp. 933, 934–35 (S.D.Ill.1934); *see also McCloskey v. McIntyre*, Nos. TH 85–7–C, EV 85–12–C, slip op. at 19–20 (S.D.Ind. Feb. 7, 1985) (appeal pending). *Cf. Metzenbaum v. FERC*, 675 F.2d at 1287 (Article I, Section 5, Clause 2 textually commits to the Houses of Congress exclusive rulemaking authority as to "the Rules of ... Proceedings" (citation omitted)); *Williams v. Bush*, No. 81–2839, slip op. (D.D.C. Feb. 3, 1982) ("Article I, Section 5, Clause 2 ... textually commits to the Senate the power to ... 'expel a member.'" (citation omitted)). Therefore, the issues which plaintiffs seek to have the Court resolve in this action fall squarely within a "textually demonstrable constitutional commitment of the issue" to the House and makes it a

nonjusticiable political question. *See Baker v. Carr*, 369 U.S. at 217, 82 S.Ct. at 710.

■ The only remaining "formulation" outlined in *Baker v. Carr* that is relevant here is whether a decision on the merits in this action would result in "the impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government...." *Id.* To make an inquiry and address the merits of plaintiffs' claim would surely demonstrate a lack of respect to the House of Representatives, particularly in light of numerous decisions which have determined that in Article I, Section 5 of the Constitution rests the dominion of each House of Congress as "[j]udge[s] of the Elections, Returns and Qualifications of its own Members...." U.S. Const. Art. I, § 5, cl. 1. Further, the House has determined specifically how it wishes to proceed in judging the election of one of its Members.[4] Accordingly, the Court finds that the issues it is asked to resolve in this case are nonjusticiable in that they involve political questions.

Although plaintiffs do not dispute seriously the argument that Members of the House have the express authority to "judge" the election of its Members, they claim that the House must make this determination within the bounds of the Constitution. Plaintiffs contend that if, when judging the election of one of its Members, the House violates the due process clause of the fifth amendment or the freedom of speech and association provisions of the first amendment, those violations must be able to be redressed in Federal court. The Court disagrees with plaintiffs' assertions.

■ The very nature of the political question doctrine demands that a court abstain from interfering with a coordinate branch of government whose responsibility it is to make independent political choices. The doctrine demands that a court not immerse itself in a political matter which is principally in the dominion of a political branch of government. Although plaintiffs have alleged constitutional violations, the Court, in assessing these claims, must balance the strong institutional interests of separation of powers against the alleged constitutional deprivations. If the Court were to address the merits of plaintiffs' claim, it would, in effect, be substituting its judgment for that of the House of Representatives. The Court cannot and should not make that determination.

■ Further, plaintiffs' due process claims cannot withstand minimal scrutiny. Surely, the only due process which plaintiff McIntyre is due, is that which is provided by the House as "[j]udge[s] of the [e]lections ... of its own Members." U.S. Const. Art. I, § 5, cl. 1.[5]

■ In addressing the first amendment claim, the Court concludes that it would be impossible for the House to make a determination as to the election of one of its Members without some temporary deprivation of first amendment rights. As the Supreme Court in *Barry v. United States ex rel. Cunningham*, 279 U.S. 597, 49 S.Ct. 452, 73 L.Ed. 867 (1929) noted in addressing the "equal representation" clause found in Article 5 of the Constitution, "the temporary deprivation of equal representation which results from the refusal of the

4. The respect due a coordinate branch of government is not without limitation. *Cf. Barry v. United States ex rel. Cunningham*, 279 U.S. 597, 49 S.Ct. 452, 73 L.Ed. 867 (1929). If, for example, the House completely abdicated its responsibilities as "[j]udge of the [e]lections" and this abdication failed to be corrected by the political process, a federal court, as the "department [designated] to say what the law is", *Marbury v. Madison*, 5 U.S. 137, 177, 1 Cranch 137, 177, 2 L.Ed. 60 (1803), could interject. *See Metzenbaum v. FERC*, 675 F.2d at 1287. What plaintiffs have alleged on the face of their complaint, however, cannot be considered such an abdication of responsibility. *See infra* at 1059–1060.

5. The Court notes in passing that the Supreme Court in *Barry v. United States ex rel. Cunningham*, 279 U.S. 597 stated that "[w]hether, pending this adjudication, the credentials should be accepted, the oath administered, and the full right accorded to participate in the business of the Senate, was a matter within the discretion of the Senate. This has been the practical construction of the power by both Houses of Congress...." *Id.*, 279 U.S. at 614–15, 49 S.Ct. at 455 (footnote omitted). The Supreme Court apparently believed that whatever a House of Congress decides as the appropriate process for determining the election of its Members, passes Constitutional muster.

Senate to seat a member pending inquiry as to his election or qualifications is the necessary consequence of the exercise of constitutional power." *Id.* at 616, 49 S.Ct. at 456.

The Court must also look at this case from a practical point of view. How can it stand side by side with the House of Representatives in making a decision in an area which has been specifically designated by the Constitution as a political question? Certainly, political arguments must be confined to the political arena. Here lies the essence of the political question doctrine.

For the reasons outlined above, the Court cannot interject itself into a matter which is within the primary dominion of the House of Representatives to judge the election of its Members.

Accordingly, the Court must dismiss this case for failure to state a claim upon which relief can be granted.

## ORDER ON REMAND

Pursuant to the United States Court of Appeals for the District of Columbia's order of May 7, 1985, with instructions for this Court to dismiss plaintiffs' complaint as moot, it is by the Court this 8th day of May 1985,

ORDERED that this action is dismissed on grounds of mootness.