**Mark BARKLEY, Individually and for and on behalf of a Class of voters Similarly Situated**

v.

**Thomas P. O'NEILL, Jr., Individually and as Speaker of the House of Representatives of the 99th Congress of the United States, et al.**

**No. EV 85–164–C.**

United States District Court,
S.D. Indiana,
Evansville Division.

Sept. 13, 1985.

Lawrence J. Halloran, Nat. Rep. Congressional Committee, Washington, D.C., Theodore Lockyear, Lockyear & Kornblum, Evansville, Ind., for plaintiff.

Michael L. Murray, Asst. Counsel to Clerk, U.S. House of Representatives, Washington, D.C., for defendants.

## MEMORANDUM ORDER

BROOKS, District Judge.

This matter is before the Court upon the motion of the defendants to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) Federal Rules of Civil Procedure. The Court having considered the motion and supporting memoranda, the opposition of the plaintiff thereto as well as the oral arguments of counsel, and now being duly advised in the premises finds, for the reasons set forth below, that the motion should be granted.

Plaintiff, Mark Barkley, on May 22, 1985, brought this action individually and as a representative of a class of voters similarly situated against certain named Democratic representatives, who were members of the House Committee or Task Force, both in their individual capacity and as members and representatives of other Democratic members of the United States House of Representatives. In addition, plaintiff named as defendants both individually and in their official capacity, Thomas P. O'Neill, Jr., Speaker of the House of Representatives; Jim Wright, Democrat Majority Leader of the House; Thomas Foley, Democrat Majority Whip of the House; and Benjamin J. Guthrie, Clerk of the House. On August 13, 1985, plaintiff filed an amended complaint the allegations of which do not differ in any material respect from the original complaint.

Essentially, what plaintiff seeks by way of his amended complaint is to have the Court declare the actions of the defendants in refusing to count thirty-two (32) absentee ballots of the plaintiff and plaintiff class members to be unconstitutional, invalid and a deprivation of the rights, privileges and immunities secured to plaintiff and plaintiff class members by the Constitution of the United States, as well as a denial of due process and equal protection as guaranteed by the Fifth Amendment to the Constitution. Plaintiff also seeks an order declaring that the ballots of the plaintiff and plaintiff class members be opened and the votes for the appropriate candidate recorded and that such results be transmit-

ted by the defendant Guthrie, Clerk of the House, to the House itself.

Defendants in response to plaintiff's original complaint filed on August 1, 1985, a Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) Federal Rules of Civil Procedure respectively. By Supplemental Memorandum dated August 16, 1985, defendants incorporated the arguments made in their original memorandum in support of their motion to dismiss as applicable to the amended complaint.

The facts underlying this dispute and the allegations of plaintiff's complaint are familiar and may be briefly summarized as follows.

Plaintiff, along with the plaintiff class members, voted by absentee ballot in the November 6, 1984, general election for the Office of Representative in Congress for the Eighth Congressional District of Indiana. On December 13, 1984, the Secretary of State of Indiana certified Richard D. McIntyre as the winner of the election which said certificate was signed by the Governor of Indiana and forwarded to the defendant Guthrie.

On January 3, 1985, however, prior to McIntyre being administered the oath of office, the House passed House of Representatives Resolution Number 1 ("House Resolution 1") which referred the election in the Eighth Congressional District to the Committee on House Administration for inquiry. The Committee thereafter determined to conduct its own recount and appointed a Task Force consisting of defendants Panetta and Clay and Rep. William Thomas of California to supervise the recount. The Task Force, in the course of conducting the recount, discovered a number of absentee ballots and ballot envelopes which did not comply with verification and authentication requirements of Indiana law in that they were not notarized. Of these, fifty-two (52) absentee ballot envelopes which had been opened on election night and the ballots therefrom intermingled with other absentee ballots were found.

The Task Force determined that these ballots should be counted since they were indistinguishable from the other absentee ballots with which they had been intermingled. Another nine (9) sealed unnotarized absentee ballots which had been sent to the precincts were discovered in Spencer County. These ballots were also counted after the Task Force determined they should be opened and included in the recount totals. In addition to these sixty-one (61) ballots, another thirty-two (32) unnotarized absentee ballots, those of the plaintiff and plaintiff class members, were found in the possession of the County Clerks in Lawrence, Orange, Greene and Daviess counties.

On April 19, 1985, Task Force members Panetta and Clay voted not to count these latter thirty-two (32) ballots based upon perceived differences between these ballots and the other unnotarized absentee ballots which the Task Force had previously counted. Subsequently, on April 30, 1985, the House Committee voted to approve the Task Force decision not to count the ballots of the plaintiff and plaintiff class members. On May 1, 1985, the House of Representatives, acting upon the recommendations of the Task Force and the House Committee, voted to seat Francis X. McCloskey as the representative from the Eighth District.

Plaintiff, in his Amended Complaint, has alleged that his ballot as well as the ballots of the plaintiff class members were identical to the other unnotarized absentee ballots counted by the Task Force, but that their ballots were not counted. It is further alleged that the actions of the various defendants in failing to count the thirty-two (32) ballots and in approving the decisions of the Task Force and House Committee deprived plaintiff and the plaintiff class members in an unconstitutional manner of their vote, their right to due process and equal protection and that furthermore such actions constitute invidious, arbitrary and unjustified discrimination between their ballots and other like ballots, which were counted, thereby placing plaintiff and plaintiff class members in a position of constitu-

tionally unjustifiable inequity vis-a-vis other voters in the Eighth District.

In their motion to dismiss defendants, relying primarily upon the recent Seventh Circuit decision in *McIntyre v. Fallahay*, 766 F.2d 1078 (7th Cir.1985), argue that the Court does not have jurisdiction over the subject matter of this suit and that plaintiff has asserted a claim for relief which cannot be granted because the matter involved is a nonjusticiable political question.

Plaintiff has asserted several basis for jurisdiction in this case. Among them is Title 28 United States Code § 1331 which provides that "The district courts shall have original jurisdiction of all 'civil actions' arising under the Constitution, laws, or treaties of the United States." The Court is not of the opinion that there can be any dispute that plaintiff's cause of action in this case "arises under the Constitution or laws of the United States."

In his complaint, plaintiff has set forth various claims, alleging that the actions of the defendants have violated his and the plaintiff class members rights to due process and equal protection as protected by the Fifth Amendment, and that by discriminating between plaintiff's and the plaintiff class members' unnotarized absentee ballots and other unnotarized absentee ballots defendants have violated Section 1971(a)(2)(A) of Title 42 United States Code, which pertains to voting rights. At oral argument on the motion, counsel for plaintiff indicated that the focus of the complaint is upon the discriminatory treatment of the ballots of the plaintiff and plaintiff class members. Such allegations are in the opinion of the Court sufficient to set forth a case (or at least a claim) "arising under the Constitution or the laws of the United States." Therefore, "the subject matter is within the federal judicial power defined in Art. III § 2, and so within the power of Congress to assign to the jurisdiction of the District Courts." *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Accordingly, the Court finds that it has subject matter jurisdiction over this action.

However, as Judge Green noted in her memorandum opinion in *McIntyre v. O'Neill, et al.*, 603 F.Supp. 1053 (D.C.C. 1985), "Merely because a court has determined that it has jurisdiction over an action, this does not end its inquiry as to whether it may address the merits of the case. A court must also determine whether the action is justiciable or, more specifically ... whether the matter involves a political question which should not be resolved by a Federal Court. See *Metzenbaum v. FERC*, 675 F.2d 1282, 1287 (D.C. Cir.1982)." In the case *sub judice* the Court feels compelled to find that plaintiff's complaint presents a nonjusticiable political question.

As the Supreme Court noted in *Baker v. Carr, supra,* "In determining whether a question falls within (the political question) catagory, the appropriateness under our system of government of attributing finality to the action of the political department ... (is a) dominant consideration () .... The nonjusticiability of a political question is primarily a function of the separation of powers." *Id.* 369 U.S. at 210, 82 S.Ct. at 706.

In determining whether a case involves a political question, it is necessary for the Court to find that one of the following "formulations" exist:

a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

And unless one of these "formulations" is present in the case, there should be no dismissal for nonjusticiability on the grounds of a political question's presence. *Baker v. Carr*, at 217, 82 S.Ct. at 710. In considering the above "formulations" this Court finds that the first and fourth "formulations" are pervasive in this case.

Article I, Section 5, Clause 1 of the Constitution provides that: "Each House shall be the Judge of the Elections, Returns, and Qualifications of its own members...." Numerous courts have found that the judgment of election to office of congressmen resides within that House of Congress. *Rayner v. The Chicago Board of Election Commissioners*, No. 78C5116, slip op. (N.D.Ill. Mar 14, 1979), *affd· mem.* 636 F.2d 1222 (7th Cir.); *Manion v. Holzman*, 379 F.2d 843 (7th Cir.), *cert. denied* 389 U.S. 976, 88 S.Ct. 479, 19 L.Ed.2d 470 (1967); *Johnson v. Stevenson*, 170 F.2d 108 (5th Cir.1948) *cert. denied* 336 U.S. 904, 69 S.Ct. 491, 93 L.Ed. 1069 (1949). That such judgment includes the right to determine which ballots should be counted cannot be seriously questioned. *McIntyre v. Fallahay*, *supra* ("The House is not only 'Judge' but also final arbiter. Its decisions about which ballots count, and who won, are not reviewable in any court") Thus, the Court finds that the issues which plaintiff seeks to have this Court resolve fall squarely within a "textually demonstrable constitutional commitment of the issue" to the House and thus is a nonjusticiable political question.

Additionally, the Court finds that the resolution of the issues presented by plaintiff's Amended Complaint would be impossible without the Court expressing a lack of respect for the decisions of a coordinate branch of government. Here the House has specifically determined, pursuant to its authority as "(j)udge(s) of the Elections, Returns, and Qualifications of its own members....", which votes are to be counted. What plaintiff requests of this· Court is to declare that decision invalid for a number of reasons. To do so would require this Court, in effect, to substitute its judgment for that of the Task Force, the House Committee, and the House of Representatives. This the Court cannot and should not do.

Plaintiff seeks to refute these arguments by contending that the rights of the voters in this case transcend the rights of the candidates themselves or the power of the House to act as the "(j)udge(s) of the elections, returns and qualifications of its own members...."

It is argued that the House may only make a determination within the bounds of the Constitution and that when, as it is alleged the House has done in the case *sub judice*, it has acted outside those bounds, such violations must be able to be redressed in Federal Court. The Court finds such arguments unavailing. First of all, it must be recognized that the ballots in question were invalid under State law. Thus, it cannot be said that plaintiff or the plaintiff class members have any right *per se* to have their *invalid* ballots counted. Secondly, as Judge Green has already noted in *McIntyre v. O'Neill, supra:*

> The very nature of the political question doctrine demands that a court abstain from interfering with a coordinate branch of government whose responsibility it is to make independent political choices. The doctrine demands that a court not immerse itself in a political matter which is principally in the dominion of a political branch of government. Although plaintiffs have alleged constitutional violations (as well as statutory violations), the Court, in assessing these claims, must balance the strong institutional interests of separation of powers against the alleged constitutional deprivations.

■ The Court finds on the facts of this case that the alleged constitutional violations must yield to the strong institutional interests. Furthermore the Court agrees that it is illogical to assume that the House's authority to judge the elections and returns of its members does not include the authority to make determinations on a vote by vote basis, as to what votes

are to be counted. To exclude from the House's authority the ability to determine whether or not specific ballots should be counted would ignore the historical application of the House's responsibility. Such a function is as much a necessary consequence of the exercise of constitutional power as was the Senate's ability to refuse to seat a member pending investigation in *Barry v. U.S. ex rel Cunningham*, 279 U.S. 597, 49 S.Ct. 452, 73 L.Ed. 867 (1929).

Finally, the Court has reservations about the amenability of the Congressional defendants to this suit. Although defendants have only briefly touched on the issue of legislative immunity in their motion to dismiss, the Court nevertheless notes that it would appear that the actions of which plaintiff complains were actions taken by defendants while "acting in the sphere of legitimate legislative activity." *See, Powell v. McCormick*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). In light, however, of its earlier findings, the Court does not deem it necessary to a resolution of this motion to determine whether defendants are in fact cloaked with legislative immunity.

The aftermath of the November 6, 1984, election has been mind boggling. Actions have been prosecuted in two United States District Courts, two Courts of Appeal, the Supreme Court, and before the House of Representatives, and the end of the litigation arising out of this election does not appear in sight. Because the House has settled the question of who will be seated as the Representative of Indiana's Eighth Congressional District, this Court finds that it would be inappropriate to substitute its judgment for that of the House in determining which ballots should be counted. To do so would be to intimate how the House ought to have decided and is an area into which the Court is reluctant to interject itself.

Accordingly, for the reasons outlined above, the Court finds that defendants' Motion to Dismiss should be and hereby is GRANTED.

This cause is, therefore, ORDERED dismissed with each party to bear its own costs of the action.